26  665<br>
91  401<br>
26  665<br>
124 1011<br>
26  665<br>
128 216

THE STATE, *ex relatione*, ROBERT W. HABERSHAM, and oth-
ers, plaintiffs in error, vs. THE SAVANNAH AND OGECHEE
CANAL COMPANY, defendant in error.

[1.] The use of a road by the public for thirty years and indefinitely more, by
the public, is sufficient to authorize a jury, to presume  a grant to the public.

[2.] If even a private road be obstructed by a canal, the owner of the road, has

the right to require the makers of the canal, to bridge the canal so as to re-store the means of passage; and—

[3.] Mandamus is the proper remedy.

Mandamus, in Chatham Superior Court. Decision by Judge FLEMING, at December Term, 1858.

Robert W. Habersham and Mary Telfair, trustees of William B. Hodgson and wife, and the said Mary Telfair in her own right, and others, applied to the Superior Court of Chatham county for a mandamus, to compel the Savannah and Ogechee Canal Company, to construct a bridge over said canal, at its intersection with the Sabine fields road. A *rule nisi* was granted, requiring said company to show cause, why the *mandamus* should not issue.

The Canal Company filed their answer, setting forth certain causes why said *mandamus* should not issue; and the relators having traversed said answer, the case came on to be tried; and after the testimony on the part of relators had closed, respondents moved for a nonsuit, and to dismiss said rule, which motion the presiding Judge refused; and after respondent had introduced testimony, the case was submitted to the jury, and the following verdict rendered : " We find the answer of respondent to be false, and that a peremptory *mandamus* issue." Whereupon, the Savannah and Ogechee Canal Company moved for a new trial upon the following grounds :

1st. Because his Honor the Judge erred in refusing the motion to dismiss the rule, made upon the following grounds: That the road over which the bridge is asked to be built is not a public road; because it is not the duty of the Savannah and Ogechee Canal Company to build bridges over any other than public roads; because the writ of *mandamus* is not the proper remedy; because the relators were barred by laches.

2d. Because his Honor the Judge erred in deciding that

the Savannah and Ogechee Canal Company were bound to build bridges over all public roads intersected by the canal.

3d. Because his Honor the Judge erred in deciding that *mandamus* was the proper remedy.

4th. Because his Honor the Judge erred in deciding that the Savannah and Ogechee Canal Company were bound to build bridges over all private roads intersected by the canal.

5th. Because the verdict of the jury is contrary to the charge of the Court, in this, to-wit: Because the Court charged the jury that when the statute commenced to run, it never ceased, and that the statute commenced to run from the time the respondents refused to build the bridge. Because his Honor the Judge charged the jury that the time which would bar an action at law would bar the right of *mandamus*.

6th. Because the verdict of the jury was contrary to evidence, in this, to-wit: Because the evidence proved that more than seven years had elapsed, since the right, if any ever existed, obtained for the relators to compel the erection of said bridge, before they had asserted the same. Because the evidence proved that the relators were barred by the time which had elapsed, from the time when the demand was made by them, for the building of the bridge, and the refusal, neglect and failure so to do by the respondents.

7th. Because the finding and verdict of the jury was contrary to law.

8th. Because the verdict and finding of the jury was contrary to evidence.

### Brief of Testimony.

1st. The title of the relators to the Sabine fields plantation admitted.

2d. *Robert Habersham*, sworn, on the direct examination, says: He has known Sabine fields road for fifty years; after passing Sabine fields, it passes plantations beyond; has traveled it, and has known others to have traveled it without

question; knows a bridge was put there across the canal, after the canal was cut; does not know by whom the bridge was built; has passed the canal when it had no water in it; continued without water for some time; knew Mr. Hodgson to apply to the elder Mr. Scudder to build a bridge there often, after water had been put back in the canal; thinks that banks of canal were cut so as to make sloping drive cut through, in A. D., 1855.

*Cross-Examined.*—Has driven through the Sabine fields road to the Dean forest road; has never been able to find any other way to the Sabine fields; there is a small tract between Sabine fields tract and the canal.

*Direct resumed.*—Right to travel beyond Sabine fields never denied; there are several settlements beyond Sabine fields; persons beyond Sabine fields have been coming fifty years to Savannah, to vote, &c., by the Sabine fields road; does not extend beyond Middleton's place.

*James Hunter*, sworn: Has known Sabine fields road for fifty-five or sixty years; it was not a public road worked by public hands; stages used to pass it, I understand; several places beyond Sabine fields; it is several miles from Sabine fields to Middleton's; used to hunt there with Mr. Telfair; Mr. Telfair claimed it as his private road; witness told Mr. Telfair if any person was injured by the falling of the bridge over the canal, he might make him (Mr. Telfair) responsible; Mr. Telfair said the canal was bound to keep up the bridge; witness said, suppose the Canal Company do not? Mr. Telfair said, he had given them the right of way upon condition that they would build and keep up the bridge; that if they did not do it, he would take away the right of way and stop up the canal.

*J. F. Brantley*, sworn: Knows the Sabine fields road: Jenckes owned the land on this side of the canal; Sabine fields on the other; Neidlinger, Baker, Cubbedge and others live on the road this side of Middleton's, and travel the Sabine fields road; has known the road since A. D. 1854; It

has been traveled freely by persons wishing to do so; in crossing before bridge was put there, the water was sometimes shallow, sometimes deep—going into a buggy; had a talk with Scudder about crossing the canal; no other way to get produce to market from Sabine fields and other places.

*Cross-Examined.*—There was a road across the canal, this side the Sabine fields road; now stopped up by Mr. Hodgson.

*Direct Resumed.*—It is a common wagon road, not fit for traveling in a buggy.

*A. J. C. Shaw*, sworn: Knew Sabine fields road in A. D., 1795; has traveled it in carriage, on horseback, and on foot; Canal Company put the bridge there; there has been no obstruction on the road up to Middleton's for thirty-four years; knows, or knew Isodure Stouff as county Surveyor; has never known any other good road to Sabine fields and the outer settlements; the other road was a cart road; the road was always where bridge is; could cross the road until water was put in the canal.

*Daniel H. Stewart*, sworn: Knows the bridge near the brick-yard; leads to the Springfield lots; has traveled the road to the Sabine fields; knew a bridge there, near brick-yard, long ago.

*John Scudder*, sworn: The Canal Company refused to build the bridge.

*James A. Baker*, sworn: Has known Sabine fields road since A. D., 1853; knows no other good road for persons going to lands on Sabine fields road; banks of canal were cut so as to allow passage of vehicles, about midde of A. D., 1855, before access was stopped up.

After motion was made by respondent's counsel to dismiss the rule, and motion overruled by the Court, respondents introduced minutes of corporation, which had been produced under notice from relators, and examined by them, and read the following extracts from the minutes:

1. January 21, 1829.—The proposal of William McGre-

gor and John Murphy, to complete the bridge at Mr. Telfair's road, and the culvert in Raspberry swamp, for the sum of $450, was laid over for further consideration.

2. February 11, 1829.—The proposal of McGregor and Murphy, for building bridges, culvert, &c., for the sum of $450, was accepted, and referred to the contract committee for their report thereon as to the responsibility of the contractors to finish the work.

3. May 22, 1838.—A communication from R. Habersham, in behalf of the Misses Telfair, requesting a bridge over the canal contiguous to the plantation, to be built by the company, or permission to have a road adjacent to the canal and parallel with it, so as to enable them to use bridge lower down, was read.

*Resolved,* That permission be granted to the Misses Telfair to have a road adjacent to the canal and parallel with it, as requested in Mr. Habersham's letter, and that the Secretary do so inform him.

*Motte Middleton,* sworn on behalf of respondents, says: He knows Sabine fields road, crossed by the canal; there is another road running parallel with the canal, and crossing the bridge lower down; the lower bridge is a good bridge, better than any he has ever seen on the old Sabine fields road; he has not traveled the road crossing at lower bridge for three years; previous to that time he had been traveling it for a number of years; for a light buggy he preferred it to the old Sabine fields road; the old Sabine fields road was the best for loaded wagons; with very little work the other road might have been made equally good for wagons.

*Robert Habersham,* recalled by respondents, says: He has been the agent of the Misses Telfair for many years, but seldom went to their plantations; has been so since the death of Mr. Telfair, which, he thinks, occurred in 1832; knows that, as agent of the Misses Telfair, he frequently made application to the Canal Company to build bridge across canal on Sabine fields road, about which there were constant dis-

putes after the old bridge fell into decay; cannot say whether applications were made before or after canal was disused; the fact that the canal was not used, and no water in canal, did not prevent applications for a bridge there, so far as the · witness recollected; minutes of Canal Company exhibited to him; says he has no recollection of the parallel road; in making the application he acted as the agent of the Telfairs; does not know that the application referred to in the minutes related to a bridge across the canal on the Sabine fields road; does not recollect that a bridge was required by the Telfairs at any other point; has no recollection that the resolution of the Canal Company in 1838, as appears by the minutes produced in evidence, were ever brought to his notice.

The Court below refused the motion for a new trial, and respondent excepted.

WARD, JACKSON & JONES, for plaintiff in error.

HARDEN & LAWTON, *contra.*

*By the Court.*—BENNING, J. delivering the opinion.

The first question is, was the Court below right, in overruling the motion for a nonsuit?

That the Court was, if the evidence was such that it might authorize the jury to find, that it was the duty of the Canal Company to build the bridge; and if *mandamus* was the remedy, is clear.

The road was either a public road, or, a private road.

If it was a public road, it was clearly the duty of the company, to build the bridge—a duty imposed by the Act of 1833, amendatory of its charter, which Act says; "That whenever the said canal shall intersect a public road, the said corporation shall be bound to build a safe and suitable bridge."

[1.] And there was evidence sufficient to authorize the jury to conclude, that the road was a public road. There was evidence to prove, that it was in use as a public road, in 1795, and, that it continued so, down to the time of the digging of the canal, which was about 1830. How long before 1795, it had been so in use, does not appear. From a public use so long continued as this, the jury would be at liberty to infer a grant of the use to the public. *Williams vs. Turner*, 7 *Ga.* 348.

There was evidence, then, which would authorize the jury to find, that the road was a public road; and therefore, which would authorize them to find, that it was the duty of the company to build the bridge.

If the road was a private one, it was the duty of the company to build the bridge, provided, 1st, they agreed to do it; or 2dly, the law was that they must do so, agreement or no agreement, unless they had, by something, obtained an exemption from the duty—as, by a release, or the statute of limitations.

There *was* evidence from which, the jury would be authorized to infer such an agreement.

Mr. Hunter swears, that Mr. Telfair told, that he had given to the company, "the right of way upon condition that they would build and keep up the bridge." This evidence was in, and therefore, to credit it was the right of the jury.

The company did build and keep up the bridge, in Mr. Telfair's lifetime.

Frequent applications were made to them, by the successors to Mr. Telfair's rights, to build the bridge, and it does not appear that the company in reply to these applications, took the ground, that if they were under obligation to build the bridge, they were under none to them to do it. On the contrary, it appears, that the company conceded to the Telfairs, the right to have a road parallel to the canal. Would they have done this, unless there was some agreement or under-

standing by which, they were under a duty peculiar to the Telfairs.

There was, then, evidence from which, the jury might have inferred an agreement to build the bridge.

Was there any evidence of the existence of any thing by which, they had obtained a discharge from this agreement?

There was no evidence to show, that any proceeding under the 12th section of the charter, had taken place; that section which provides a mode by which, the company might obtain the "lands," &c., which they might need. And even if this were not so, it can hardly be true, perhaps, that that section applies to the case of mere easements, such as is the right to use a road.

True there was proof of an application on behalf of the Misses Telfair, to the company, to build a bridge, or for "permission to have a road adjacent to the canal, and parallel with it, so as to enable them to use the bridge lower down;" and, proof, that permission to have such a road, was given, and that such a road was opened and used, till the canal went dry.

But 1st, the jury would be at liberty to conclude, that it would be a straining of these facts, to make them amount to a release on the part of the Telfairs, of their right to a bridge; and, to a conveyance on the part of the company, of their right to the use of the land, covered by this road; when it might as well be that no more was meant by the facts, than to make the parties, respectively, tenants at will of each other.

2dly, conceding, that these facts do amount to such a release of the right to a bridge, yet the evidence shows, that the canal went dry—went into "disuse," in 1838, or thereabouts; and, that, thereupon, the old use of the road over the bed of the canal, was resumed by the Telfairs and the public; and, that this resumed use, continued until 1855, and for most of the time, with the bed of the canal dry.

Habersham et al. vs. Savannah and Ogechee Canal Co.

Now when a road or other way, is abandoned, the right of way, returns to the owner of the fee.

At least, it does, if the owner of the fee, has used the land, for seven years and upwards, as his own.

Indeed, the use of the land for a road, by any one for seven years and upwards, wonld, according to the case aforesaid, in 7 *Ga.*, give him the right so to use it.

The evidence, then, about this affair of the road that was to run parallel with the canal, is not such that it would require the jury, to say, that it discharged the company from their agreement to build the bridge, supposing there was such an agreement.

It is also true, that the company further rely on the statute of limitations, as giving them an exemption from such agreement, if an agreement existed.

Then was the evidence such as to require the jury to believe, that the company had had adverse possession of the part of the road cut by the canal, to the stoppage of travel on that part? The evidence was, the reverse. It was, that, at first, the company put up a bridge; that the bridge stood till about 1838; and that about that time, the canal went into disuse, and became dry, and the bridge fell down or was removed and the use of the old road across the canal-bed, was resumed by the Telfairs and the public; and, that this use of the road, continued until 1855, most of the time, with the bed of the canal dry; and, that in 1855, the slopes to the banks, were filled up, and thus, the road rendered impassable.

Now, during the time of the bridge, there was no such adverse possession of the road to the obstruction of travel, for during that time, the bridge itself served in place of the part of the road over which it stood—the bridge itself was indeed to be considered, as that part of the road. At all events, the bridge was an admission of the duty to build a bridge, and so it could not be evidence of the assertion of a right adverse to that duty. And, during the subsequent time, fifteen or

eighteen years, there was no exclusive possession of any sort in the company, but the possession was in the Telfairs and the public, for they used the canal-bed corresponding to the place of the old road, as a road, in the same way in which, they had used the old road, before the making of the canal.

According to the evidence, then, the adverse possession was, if any thing, the other way. The Telfairs and the public were holding adversely for fifteen or eighteen years, for a period running up to within a year or two of the commencement of the present suit.

It turns out, then, that there is, in the evidence, nothing which would have required the jury to believe that any matter existed, to give the company a discharge from their agreement with Mr. Telfair, supposing, the jury should conclude, as they might from the evidence, that such an agreement existed.

Then the evidence was such, that it would have authorized the jury to conclude, that it was the duty of the company, under an agreement, to build the bridge.

3dly. But even if there was not any evidence of such an agreement, yet if the law itself was, that the company must build a bridge, though the road might be only private, it was their duty to build the bridge, unless there was something to exempt them from the duty.

[2.] It *was* the law, that they must build a bridge, if their canal was such as to obstruct the road, and prevent its use as a road, and the Telfairs had the right to use the road.

Such an obstruction is a nuisance. "If I have a way annexed to my estate across another's land and he obstructs me in the use of it, either by totally stopping it or putting logs across it, or ploughing over it, it is a nuisance." 3 *Black.* 218.

The canal, after the slopes in its banks at the road, had been filled up, did become an obstruction to the road.

The evidence was such as to authorize the jury to find, that the relators did have the right to use the road; for it was such as to authorize the jury to find, that the whole pub-

lic had this right.   It showed the road to have been in public use for some thirty years and an indefinite time previously.

But if they had the right to use the road, then it was the duty of the company, not to obstruct the road and thus prevent that use, but, to leave the road as it was, or if not, to put something as a substitute for the part they appropriated. And a bridge is the only thing that would at all answer for such substitute, and even it would not be equal to that which it would take the place of—the solid earth.

There was nothing in the evidence, to excuse the company from the performance of this duty thus imposed by the law.   The license for the road parallel to the canal, the plea of the statute of limitations, were no more sufficient, to excuse them from this duty imposed by the law, than they were found to be, to excuse them from the duty imposed by the agreement with Mr. Telfair, if there was an agreement with him.

Thus then, it appears, that there was evidence sufficient to authorize the jury to believe, that the road was a public road; in which case, the charter itself makes it the duty of the company, to build a bridge—and, evidence sufficient, if it was a private road, to authorize them to find, 1st, that there was an agreement by which, it became their duty to build the bridge ; and 2dly, that, even without an agreement, the law itself imposed the duty on them to build the bridge.

There was then, a plenty of evidence to authorize the jury to believe, that this duty existed.

And this brings us to the question, supposing the duty to have existed, was mandamus the remedy.

[3.] We think it was the remedy.

1st. No other remedy is adequate.   Damages might, perhaps, do for the past, but they are not adapted to the future. The obstruction will still remain.   Really, however, the injury is manifestly, of a kind which it is impossible to measure, with any approach to certainty, by damages. And when there is no other adequate remedy, mandamus lies.

Habersham et al. vs. Savannah and Ogechee Canal Co.

2dly. Mandamus has been actually employed for abating nuisances. *Tapping on Mand.* 171.

It appears then, that both of the things assumed hypothetically at the outset, existed—it appears, first, that the evidence *was* such, that it might authorize the jury to find, that it was the duty of the company, to build the bridge; and secondly, that mandamus *was* the remedy. It follows, that the case was one, in which it would have been wrong, to grant a nonsuit.

This disposes of the first exception, which was, to the refusal of the Court to grant a nonsuit. The next and only other exception was to the refusal of the Court, to grant the motion for a new trial.

All the grounds of that motion, but two, are involved in the motion for a nonsuit; and consequently they have been disposed of, in the disposition made of that motion. Of the two, one is, that the jury found against a part of the charge of the Court, the part which told them, that when the statute of limitations began to run, it never ceased to run; and that it began to run from the time, respondents refused to build the bridge. The Court itself became satisfied that this charge was wrong, and so said in refusing this motion.

And we think it was wrong, as must appear from what has been already said.

The refusal referred to was made, probably, at a time when there was a passage way across the bed of the canal; and that, and not an intent to claim adversely, may have been the reason of the refusal.

3dly. But if this is not so, yet the use of the road over the canal-bed, by the Telfairs and the public, for fifteen or twenty years, would, not only stop the running of the statute in favor of the company, but would set it to running against them.

There is nothing then in this ground.

The other is, that the jury found the return to the *rule nisi*, "false," although, there were some things in that return, that were not false.

. The late statute requires the verdict to be in this form. And its meaning, doubtless, must be, that if the material parts of the return are false, i. e., the parts material to the defence, then the verdict must be, "false" generally, although there may be some things in the return that are not false. Any other meaning would render the statute not only absurd, but impracticable. There will probably never be a return in which every thing will be false.

We think, then, that there is no merit in the exception to the refusal to grant a new trial, and therefore we affirm both of the judgments excepted to.

Judgment affirmed.