THE STATE *ex rel* of JAMES J. WARING, plaintiff in error, *vs.* THE GEORGIA MEDICAL SOCIETY, defendant in error. ·

1. Where a voluntary society applies for a charter and is incorporated to promote its objects, the acceptance of the charter subjects it to the supervision of the proper legal authorities having jurisdiction in such cases.

2. The Georgia Medical Society is a private civil corporation, and the corporators have a property in the franchise, of which they cannot be deprived without due process of law.

3. The ninth by-law of this corporation is a legal and proper one, in view of the objects of the society; but the society has not an uncontrollable discretion in its construction and enforcement. When a proper case is made the Courts are to construe it, and judge of the legality of the action of the society under it.

4. The Superior Court of Chatham county, where this corporation is located, has the visitorial power over it, with authority to redress any wrongs which the corporation may inflict upon its members.

5. Where a corporator has a clear legal right, which has been violated by the corporation, and he has no other adequate legal remedy, he is entitled to relief by *mandamus.*

6. The record in this case shows that the society censured Dr. Waring for doing that which the law not only authorizes but encourages, and the return to the *mandamus nisi* shows no sufficient cause for his expulsion. He is, therefore, entitled to a peremptory *mandamus* commanding and compelling the society to restore him to all his rights and privileges as a corporator.

*Mandamus.* Decided by Judge SCHLEY. Chatham Superior Court. January Term, 1869.

James J. Waring filed in the Superior Court of Chatham county his petition for a writ of *mandamus,* with certain exhibits and affidavits, averring the following facts: * * * * * By an Act of the General Assembly of the State of Georgia, assented to December 12th, 1804, "The Georgia Medical Society" was duly incorporated for the purposes in said act mentioned, and with the powers and privileges therein specified. The principal place of business of said corporation is in the said county. On the twenty-ninth day of August, 1868, being a regular graduate of medicine, a practicing physician in the said county, and a member and corporator of the said "The Georgia Medical Society," and

The State, etc., *vs.* The Georgia Medical Society.

entitled by law to all the rights, privileges and franchises of a corporator of said corporation, he was served with charges and specifications. At a regular meeting of the said corporation, on the second day of September, 1868, the committee, whose names were signed to said charges and specifications, made a report of their action; at said meeting Waring excepted to said charges and specifications, as being contrary to law, and it was determined by the said corporation that the committee give the names of parties referred to in said charges and specifications.

At a subsequent meeting of the said corporation, on the 30th day of September, 1868, Waring was tried for the matters contained in said charges and specifications; he again excepted to the right of the corporation to try him as aforesaid, and the corporation found him guilty as follows:

Specification 1st, charge 1st, guilty; specification 2d, charge 1st, guilty; charge 1st, guilty; specification 1st, charge 2d, guilty; specification 2d, charge 2d, guilty; charge 2d, guilty. And not guilty as follows: Specification 3d, charge 2d, not guilty.

A vote for his expulsion from said corporation having then been defeated, it was moved and carried that he be notified by a committee appointed for that purpose, that, after due deliberation, he had been found guilty of the charges and specifications as above stated; he considers this deliberate action of the society as the gravest censure; notwithstanding this decision of the said corporation, it was further moved. and carried, that he be brought before the society, informed of the decision, and censured by the president. To this last censure he objected, and left the room in which the meeting was being held, but returning in a few moments, stated that after considering the matter he would receive the censure.

At the next regular meeting of said corporation, on the seventh day of October, 1868, it was resolved that the presence of Waring being detrimental to the interest of the society he be requested to tender his resignation on or before the next regular meeting of the same, which proposition he declined; at the meeting thereafter of the said corporation, on

the 14th day of October, 1868, the following preamble and resolutions were offered and passed, viz:

" *Whereas*, at a meeting of the Georgia Medical Society, held on October, 7th, 1868, at the residence of Dr. J. B. Read, a resolution was passed by over two-thirds of the members present, to-wit: that the presence of Dr. J. J. Waring being detrimental to the interest of this society, he is hereby requested to tender his resignation on or before the next regular meeting of the same: *And whereas*, the said Dr. J. J. Waring has declined to comply with the request: *And whereas*, at the meeting of the Georgia Medical Society, held at the residence of Dr. R. P. Myers, on the 2d September, 1868, and again at the meeting of the Georgia Medical Society, held at the residence of Dr. Wm. Duncan, 30th September, 1868, he, the said Dr. J. J. Waring did behave discourteously to the society, and in such a manner as would render him ineligible to membership, and has rendered himself obnoxious to two-thirds of the members of the society; therefore, be it

*Resolved*, That at a meeting of the Georgia Medical Society, to be held 18th November, 1868, the Georgia Medical Society will, for the foregoing reasons, vote upon expelling Dr. J. J. Waring from the society: *Provided, however*, that Dr. J. J. Waring shall be permitted to resign at any time before that day.

*Resolved*, That the Secretary be ordered to hand Dr. J. J. Waring a copy of these preambles and resolutions on or before Saturday, the 17th inst."

Said preamble and resolutions, certified by the Secretary, were handed to Waring, and in reply thereto he addressed a communication to the President and members of the Georgia Medical Society, stating, among other things, that he could not resign his membership, and do voluntarily that which he had struggled through every species of mortification to prevent, because membership of the said corporation, according to the Constitution and By-laws aforesaid, was necessary to his regular standing as a physician in the city of Savannah

and elsewhere, and to the full and complete enjoyment of the benefits and rights in the pecuniary emoluments arising from the practice of his said profession, and disclaimed all intentional discourtesy to the society or its members, and protested against the irregularity and illegality of the course resolved upon as set forth in the said preamble and resolutions. Said communication was read at the meeting of the corporation held October 28th, 1868, was received, placed upon file among the records, and Waring was notified of the action taken. At the meeting of said corporation, on the said 18th day of November, 1868, Waring, by a written communicataon, informed the corporation that he was absent in consequence of severe indisposition, disclaimed any intentional discourtesy to the society, and protested against any proceedings upon the resolutions as aforesaid, as unlawful and unjust, which communication was spread upon the minutes; then a vote was taken and carried, that the preamble, charges and resolutions of October 14th, 1868, be confirmed; and then a vote was taken and carried upon expelling Waring from membership of said society, and he was expelled and deprived of his right, privilege and franchise of a corporator as aforesaid, by a vote of the members of said corporation.

He became a member and a corporator of said corporation in the year 1863, and paid the initiation fee established by the said by-laws, and has paid the annual taxes and various assessments required of him from time to time; the privilege and franchise of membership is of great pecuniary value to him, as it entitles him to the use of the library, composed of medical and scientific standard works and periodicals, and the surgical and anatomical specimens, the property of said corporation, and is necessary to his regular standing as a practitioner of medicine, and to the full and complete enjoyment of the benefits and rights in the pecuniary emoluments arising from the practice of his said profession; and said action of " The Georgia Medical Society " in expelling him as aforesaid from membership, and depriving him of his right and franchise as a corporator in said corporation is unconstitutional and contrary to law.

He has distinctly and expressly demanded that "The Georgia Medical Society" should admit, restore and reinstate him to the privilege of membership, and to his right and franchise of a corporator in said corporation, from which he was illegally expelled as aforesaid, and "The Georgia Medical Society" has refused to do so; he is legally entitled to be admitted, restored and reinstated as aforesaid, and has no other specific legal remedy for the legal rights aforesaid except the writ of *mandamus* to compel "The Georgia Medical Society" to perform its official duty, and to restore and reinstate him to the privilege, right and franchise of a member and corporator of said corporation.

Therefore, he prayed that the State's writ of *mandamus* be issued, directed to "The Georgia Medical Society," commanding it to admit, restore and reinstate him in and to his privilege, right and franchise of a member and corporator of said corporation, or in default or refusal to do so, to show for cause, some good and sufficient excuse to the contrary thereof, and why the said duty has not been performed and discharged.

The Act of Incorporation alluded to is in these words:

"*An Act to incorporate the Georgia Medical Society.*

Whereas, Noble Wimberly Jones, President; John Irvine, Vice President; John Grimes, Secretary; Lemuel Kollock, Treasurer; John Cumming, James Ewing, Moses Sheftall, Joshua E. White, William Parker, Thomas Schley, George Jones, George Vinson Proctor, Henry Bourquin, Thomas Young, Jun., Peter Ward, William Cocke, James Glenn, and Nicholas S. Bayard, have by their petition represented, that they have associated in the city of Savannah, under the style and name of "The Georgia Medical Society," for the purpose of lessening the fatality induced by the climate and incidental causes, and improving the science of medicine, and in order to insure and establish their said institution in a permanent and effectual manner, so that the benevolent and desirable objects thereof may be executed with success and

advantage, have prayed the Legislature to grant them an act of incorporation.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Georgia in General Assembly met, and by the authority of the same, it is hereby enacted,* That the several persons hereinbefore named, and others who are, or may become members of the said society respectively, the officers and members thereof, and their successors, shall be, and are hereby declared to be a body corporate in name and deed, by the style and denomination of "The Georgia Medical Society," and by the said name and style, shall have perpetual succession of officers and members, and a common seal to use; and shall have power and authority to make, alter, amend and change such by-laws as may be agreed on by members of the same: *Provided,* such by-laws be not repugnant to the laws or the constitution of this State, or the United States.

SEC. 2. *And be it further enacted,* That they shall have full power and authority, under the style and name of the Georgia Medical Society, to sue for, in the name of their President and Vice President, for the time being, and recover all such sum or sums of money, as are, or hereafter may become due the said society, by any name and style whatever, in any court of law, or at any tribunal having jurisdiction thereof; and the rights and privileges of the said society in any court, or at any tribunal whatever, to defend, and also to receive, take and apply such bequests or donations as may be made, to and for the uses and purposes intended by the said society, and shall be, and are hereby declared to be vested with all the powers and advantages, privileges and immunities of an association or society of people incorporated for the purposes and intentions of their said association.

SEC. 3. *And be it further enacted,* That this act shall be, and is hereby declared to be deemed and considered a public act, to all intents and purposes whatever.

Assented to December 12, 1804.

So much of the Constitution as throws light on this controversy is as follows :

"ARTICLE II. This society is established in the city of Savannah for the advancement of medical science and the cultivation of professional and social intercourse and good feeling among its members.

"ARTICLE III. The resident members of this society shall be composed of regular graduates of medicine, and shall be gentlemen of respectable social position.

"ARTICLE VIII. With a view to the collection of an extensive library, composed of medical and scientific standard works and periodicals, the members of this society will exert themselves to obtain contributions of books on medicine and its correlative sciences.

"ARTICLE IX. With a view to preserve for the use of the profession large numbers of surgical and anatomical specimens, the members of this society will exert themselves to obtain contributions of such specimens for the establishment of an extensive museum."

The By-laws touching this question were as follows:

"ARTICLE VII. No member of this society shall consult with or recognize as a regular practitioner of medicine, any physician who shall have become a resident practitioner for two months and shall have failed to become a member of the society.

ARTICLE IX. Any member who shall be guilty of ungentlemanly conduct during the session of the society, or who shall conduct himself, out of the society, in such a manner as would render him ineligible to membership, shall be expelled from the society according to the wishes of two-thirds of the members of the society present, provided that in every instance specific charges be set forth and handed to the individual at least one month before the society takes action thereon."

The charges and specifications presented against Dr. Waring were as follows:

"*Charge* 1. That Dr. James J. Waring has forfeited his position as a gentleman of respectable social standing. (Art. III. Constitution Georgia Medical Society.)

*Specification* 1. In that the said Dr. James J. Waring, on or about the 19th August, 1868, did become the surety on the bond of one Richard W. White, a person of color, now under indictment before the grand jury for larceny, elected Clerk of the Superior Court of Chatham county, in opposition to the wishes of the entire respectable communi+y, thereby facilitating the qualification for office of said disreputable person and causing the removal of a responsible and respectable citizen.

*Specification* 2. In that the said Dr. James J. Waring, on or about the 8th, 10th, 12th and 14th days of August, 1868, did voluntarily become surety on the bonds of Henry Broom, Josiah Grant, David DeLyon, and William Mitchell, persons of color, charged with inciting a riot, and threatening the life of an old and unoffending citizen, thus upholding persons whose seditious characters endanger the peace of the community.

*Charge* 2. That, the said Dr. James J. Waring has conducted himself in such manner as would render him ineligible to membership. (Art. IX, By-Laws Georgia Medical Society.)

*Specification* 1. In that the said Dr. James J. Waring, on or about the 19th August, 1868, affiliating with depraved and disreputable persons, became surety on the official bond of one Richard W. White, a person of color, elected by negro votes, in opposition to the votes and wishes of the entire respectable community, thereby facilitating his induction into office, and causing the removal of the old incumbent, a highly respectable citizen.

*Specification* 2. In that the said Dr. James J. Waring, on or about the 8th, 10th, 12th and 14th August, 1868, did become surety for Josiah Grant, David DeLyon, Henry

Broom and William Mitchell, persons of color, charged with riotous conduct, and with threatening the life of a citizen, without provocation, and thus keeping at large in the community persons seditious and pestilent, who endanger the peace of the community.

*Specification* 3. In that the said Dr. James J. Waring did furnish a Dispensary prescription to a person, and subsequently (or at that time) charged the patient for the medicine which was allowed gratis by the city.

*Specification* 4. In that the said Dr. James J. Waring did hold a medical consultation with a physician in the city, and whom he knew not to be a member of the Georgia Medical Society, and in violation of the rule thereof."

*Mandamus nisi* issued, and to it " The Georgia Medical Society " made the following answer :

The said Georgia Medical Society, although incorporated by the Act of the General Assembly of the State of Georgia, is, by its constitution, only incorporated for private purposes, that is to say, for the advancement of medical science and the cultivation of personal and social intercourse and good feeling among its members; and that, such being alone the objects of the said Georgia Medical Society, this honorable Court hath no jurisdiction to interfere with or control the action of said society with reference to the expulsion of the said James J. Waring therefrom; and this respondent demurs and excepts to the jurisdiction of the Court upon the matters and causes in the petition of the said James J. Waring set forth, and prays that the said rule *nisi* may be discharged.

And this respondent insisting on the want of jurisdiction in the Court to control the action of the Georgia Medical Society in the premises in the petition of the relator set forth, and not waiving the same for further cause to said rule, shews that by the ninth by-law of said Georgia Medical Society, which by-laws were of force, and assented to by the said James J. Waring at the time he became a member of said society, any member of said society who should be guilty

The State, etc., *vs.* The Georgia Medical Society.

of ungentlemanly conduct during the session of the society, should be expelled from the society, according to the wishes of two-thirds of the members of the society present: provided that in every instance specific charges be set forth, and handed to the individual member at least one month before the society take action thereon; and that the said James J. Waring was guilty of ungentlemanly conduct during the session of the society, on the second day of September, eighteen hundred and sixty-eight, and again on the thirtieth day of September, in the year eighteen hundred and sixty-eight, and that notice of such specific charges for such conduct were set forth, and handed to the said James J. Waring, and he was duly notified that such charges would be acted upon on the eighteenth day of November, in the year eighteen hundred and sixty-eight, said notice having been served upon the said James J. Waring one month prior to said eighteenth day of November, in the year eighteen hundred and sixty-eight, and the said James J. Waring having shewn no reason satisfactory to the society for his conduct aforesaid, he was, on said eighteenth day of November, in the said year eighteen hundred and sixty eight, duly and lawfully, in accordance with the constitution and by-laws of said society, found guilty and expelled therefrom; and to these matters of fact this respondent prays that they may be enquired of by the country.

And further, this respondent not waiving the want of jurisdiction of this honorable Court, but insisting as aforesaid, saith that the said James J. Waring, by reason of such expulsion from said society, is not in any way prevented from practising his profession as physician, and collecting his fees and charges therefor, and this fact the respondent prays may be enquired of by the country.

And for further answer to the said rule, this respondent, not waiving the want of jurisdiction of the Court, saith that it hath no surgical and anatomical specimens, and that the library is composed of some fifteen or twenty volumes, and some plates, of not more than $125 00 in value, said books being such as are ordinarily in the private library of the

medical practitioner. And these facts the respondent prays may be inquired of by the country.

And upon the coming in of said answer, Waring, by his counsel, moved the Court to quash or overrule said answers as insufficient, and to grant him a peremptory *mandamus;* upon which motion, after argument had, the Court overruled the motion, deciding as is stated in the assignment of errors.

Waring's attorneys sued out their bill of exceptions averring that the Court erred:

1. In deciding that Waring had no vested rights as a member and corporator of the "Georgia Medical Society."

2. In deciding that Waring had no property in the "Georgia Medical Society," because he had no rights which he could buy or sell, or bequeath, or transmit.

3. In deciding that Waring had not such a property in the "Georgia Medical Society" as was protected by the clause of the Constitution of the United States and State of Georgia, declaring that "no person shall be deprived of his property without due process of law."

4. In deciding that the said society has no right to acquire property otherwise than by bequest or donation.

5. In deciding that the right of said society to acquire property was not "property" in the relator, inasmuch as the property acquired must be obtained and held for the purposes of the incorporation, as set forth in the "Act of Incorporation."

6. In deciding that the franchise of membership in said corporation is not "property."

7. In deciding that if relator had a vested right of property in said corporation it was ascertainable, and could be recovered by an action at law.

8. In deciding that *mandamus* was not the proper remedy to enforce relator's rights, or to restore him to membership in said corporation.

9. In refusing the application for a peremptory *mandamus.*

HARTRIDGE & CHISHOLM, for plaintiff in error, made the following points: See Act of Incorporation for the legal character of the defendant. It is a *private civil corporation:* See Act of Incorporation. The College of Physicians in London, incorporated for the purpose of improving the science of medicine, held to be a *private civil corporation:* 1 Blackstone's Com., Marg. p. 471. This Medical Society, though a private corporation, has for its objects matters of public interest—for the public have an interest in the improvement of the science of medicine and the lessening of the fatality induced by climate and incidental causes: 4 Burr., 2186-7-8; Dr. Askew's case. The Legislature declares the Act of Incorporation to be a public act, thus declaring their opinion that the public were interested: See Public and Private Acts, 1 Blackstone's Com. This, then, being a *private civil corporation,* it is subject to no visitorial power save that of the Superior Court of this county, which is the same as the King's Bench in England, "where, and where only, all misbehaviours of this kind of corporations are inquired into and redressed and all their controversies decided:" 1 Blackstone's Com., Marg. p. 481; 2 John. Chan. R., 335, etc. (Kent's decisions). But, if this be a private eleemosynary corporation, the original founders, becoming themselves the corporators, and having no one to visit, can not be both *visitors* and *visited,* but are subject to the laws of the land administered by the courts: Darmouth College, 4 Wheat., 674-5; Plainfield Academy, 6 Conn., 544-5. Each individual member of a corporation is said to have a franchise or freedom: 2 Blackstone's Com., Marg. p. 37. A franchise is property; it is an incorporated hereditament: 2 Blackstone's Com., Marg. p. 21. The privilege of membership or franchise in a corporation is property, and valuable though it have no market value: 4 Wheat., 699. 657.

If the relator has been deprived of this franchise, his property, he has a clear legal right to be restored, unless he has beeen legally expelled. And this can only be attained by compelling the Georgia Medical Society, in its *corporate* and

*official* capacity, to restore to him the rights, privilege, and franchise of a corporator. To accomplish this, *mandamus* is the remedy : 20 Pick, 495 ; 2 Burr, 1045 ; 3 Burr, 1265 ; 4 Bacon Abg., p. 500 ; Con. of Geo., p. 13 ; Code, 3142 ; 1st Cranch, 168—U. S. Supreme Court. All corporate duties are *official duties* in the meaning of the Code, for in another section it declares that every corporation acts through its officers : Irwin's Code, sec. 1679 ; Ang. & Ames, sec. 696–7, 8th ed.

Section 3143 of the Code, which says that *mandamus* does not lie as a private remedy between individuals, does not mean that it will not lie between an individual and a corporation. Section 5 of the Code, which says the word *person*, when used, shall mean corporation, does not say when the word *individuals* is used it shall mean corporations ; and the use of the term *individuals* instead of *person*, proves that the legislature drew the distinction. Besides, such a reading would make it applicable equally to *public* and *private* corporations.

The writ is not limited to public corporations. See Angel & Ames on Private Corporations, chapter on *mandamus*, and all the cases cited by relator.

Nor is it limited to the enforcement of *public rights.* For it lies to be restored a member of a church ; Green vs. African Methodist Church : 1st Serg't & Rawle, 254. It lies to restore members of private corporations for charitable purposes : Com. vs. St. Patrick's Society, 2 Binney, 448 ; Com. vs. Penn. Ben. Ins., 2 Serg't & Rawle. It lies to restore a corporator of a private academic corporation, though no emoluments were attached : Fuller vs. Plainfield School, 6 Conn., 532. It lies to restore a doctor to the college of physicians to the *franchise* of membership, though not to the corporate offices, Dr. Goodard's case : 4 Bacon's Abr., 507. It lies to admit one who has been found eligible to the college of physicians, which Blackstone has said, as above, to be a private civil corporation ; and in this case Lord Mansfield said the respondent was a *corporation,* and, therefore, the Court had *jurisdiction,* Dr. Askew's case : 4 Burr, 2186–7–8. It

The State, etc., *vs.* The Georgia Medical Society.

lies to compel a private corporation, the Savannah and Ogee-chec Canal Company, to execute a contract and build a bridge over a private road for private use: 26 *Ga.*, 665. And in case of a bank, a private corporation: 12 *Ga.*, 178. The performance of a corporate *function* is a *duty* not to be demanded by action, but compelled by *mandamus:* 2 Sel. N., P. 1083—note, late edition; 5 Watts, 152; 4 *Ga.*, 44. It lies when there is a right and no other specific and adequate legal remedy: 3 Burr, 1267; 4 *Ga.*, 117; 12 *Ga.*, 178; 26 *Ga.*, 665. The remedy to prevent *mandamus* must be at law: Ang. & Ames, 711; 3 Term, 651; 10 Wend., 293; 1 Cow., 423; 12 John., N. Y., 414. The remedy to deprive one of the writ of *mandamus* must be adequate and specific: Angel & Ames on Cor., sec. 712; 26 *Ga.*, 676.

Ungentlemanly conduct is not sufficient excuse for not restoring him or proper for expelling him. The difference between amotion which relates to the removal of *corporate officers* and *disfranchisement*, which is the taking away of the *franchise, the property* of the corporator: 2 Kent, 298; Wilcock on Mun. Cor., 150; Grant on Cor. In a corporation of this kind, and particularly where there is joint property, a corporator can not be disfranchised unless the authority is expressly given in the charter: 2 Kent, 298; Dartmouth College, 4 Wheat., 675–6; Bowdoin College, 1 Sumner, 301; Plainfield Academy, 6 Conn., 545–6; 2 Raymond, 1566; Ang. & Ames on Cor., chap. 12, secs. 408 and 409, 8th ed.

The *incidental* or *implied* power of *amotion* has been determined to exist for three causes: 1st. Where the officer has been guilty of some offence which is infamous and has been convicted by a jury. 2d. Where he has been guilty of some offence against his oath of office and duty as a corporator. 3d. Where he has been guilty of an offence of a mixed nature, that is infamous and against his duty as a corporator, such as *bribery:* 2 Esp. N. P., 317–19; 1 Burr, 538; 2 Binney, 448. The cause returned, " ungentlemanly conduct," does not come within either of the above. Reliance is placed upon a by-law, which the society has no authority to make, to sustain the return. 1st. Because there is no.such power

to make such a by-law expressly conferred in the charter; see cases above cited. 2d. Because, when the authority is incidental or implied, it must rest in the *whole body*, and this by-law gives the power to two-thirds present, when a majority of the whole must do it: 8th Term, 352; 10 Mood, 76; Cowper, 503. 3d. The by-law creates a forfeiture, and is void : 1 Bishop Crim. L., sec. 58. 4th. The by-law is highly penal, and must be tested by the law relating to such statutes: 1 Bishop Crim. L., sec. 55. It does not define ungentlemanly conduct, and therefore does not prescribe a rule of conduct: 1 Black's Com., Marg. p. 44–60. It is void for ambiguity : 1 Bishop Crim. L., sec. 55.

The society may construe anything to be ungentlemanly conduct: Eden on Penal Laws, 309. Whenever the society interprets this by-law, and makes that punishable which the law previously permitted, they make the by-law *ex post facto*: Eden on Penal Laws, 309. The manner of construing this by-law enables the society to legislate upon the *social status* of the *citizen*, and to punish for *opinions*, which is unconstitutional : See Constitution of Georgia, secs. 9, 10. This by-law takes away the property of relator without due process of law, and is void : Cons. of Ga., p. 1, sec. 111. If the by-law is, then, illegal, all action under it is illegal, and the *mandamus* should be made at once peremptory : 2 Binney, 448; 1st Black.'s Comm., 476, Marg. p. But if the by-law should be held legal, the return under it is still insufficient. 1st. Because it does not state that every individual member was summoned for that purpose; 2 Burr, 723 ; 1 Stra., 1051 ; 2 Burr, 738; Tappan on Mand., Marg. p. 201. 2d. The return should set forth all necessary facts precisely, to show that the person was removed in a legal and proper manner and for legal cause; it is not sufficient to set out *conclusion only :* 2 Burr, 731 ; 2 Esp. N. P., 682; 1 Serg't & Rawle, 255.

A return in too general terms is bad, as to say that the party had absolutely refused to obey rules and orders without saying what these rules and orders were: 2 Lord Raymond, 1564 ; 2 Esp. N. P., 683. A return for neglect of duty has been held to be bad, without stating the particular instances

of neglect, that the Court may judge: 1 Stra., 58; 2 Esp. N. P., 683; Tappan on Mand., Marg. p. 199. A return which does not contain the specific charges and specifications is bad: Angel & Ames on Cor., top page 597, 2d edition; 6 Serg't & Rawle, 476. If this return is not good, it should be quashed, and the peremptory *mandamus* awarded: Tappan on Mand., 358–9, Marg. p.; 2 Burr, 723; 2 Term, 181; 3 East., 188; 8 Term, 353; 1st Serg't & Rawle, 255; 2 Serg't & Rawle, 141; 2 Binney, 449–450; 6 Conn., 543. Strictness not dispensed with in a return by the Statute of Ann: Tappan on Mand., top page 394. If the return is insffiucient there is nothing to submit to a jury.

But if this return is to be considered with the petition, and we are to look to it for an explanation of the words specific charges, there is still no dispute about facts, for the petition then constitutes the return. No matter what they may be called, whether ungentlemanly conduct or any other name, it is the substance, the *specifications*, not the charge, which makes the offence: *O'Halloran vs. State of Georgia*, 31 *Ga.*, 206. Nor do they come under any one of the heads above mentioned, for which a corporation can exercise the incidental power of amotion even. The act is done *malo animo* in cases giving incidental power of amotion: 2 Esp. N. P., 318. To make a crime or an offence there must be a combination of act and intent: Code of Ga., sec. 4227. The malfeasance must be infamous, such as forgery, and a conviction for an assault is not enough *to amove:* 2 Esp. N. P., Marg. p. 677. The offence, if not infamous, must have some respect to the corporation that is detrimental to its liberties, privileges, or franchises.: 2 Esp. N. P., marg. p. 677, No. 3. Personal offence from one member to another, or a mere *contempt* of, or contemptuous words used to, the corporation or any member, not sufficient ground of *amotion even*: 2 Esp. N. P., Marg. p. 677, No. 3; Dr. Bentley's case, 1 Strange, 557. It is not sufficient to disfranchise: 2 Binney, 448; 6 Conn., 544.

The 9th by-law itself requires that *specific charges* and specifications be handed to the accused one month before-

action. The record shows that the relator was found guilty the night the resolutions were introduced, when he was not present. His notice was that he would be expelled unless he resigned. This was clearly *illegal,* not simply irregular : 8 Term, 352; T. U. P. Charlton, 235. The whole record shows that the action on the last charges or *resolutions* was but a reconsideration of the sentence passed upon relator after the trial upon the first charges, and, therefore, illegal and void. The case is similar to the Commonwealth vs. the Guardiaus of the Poor : 6 Serg't & Rawle, 469. The traverse of respondents must be confined to facts ; it cannot go to legal consequences : 2 Burr, 731, bottom of the page ; Tappan on Mand., top page 393. Traverse of immaterial matter is bad : Tappan on Mand., top p. 392. All material suggestions and allegations of the writ, which are not denied or traversed by the return, are in contemplation of law admitted by respondents : Tappan on Mand., top p. 392.

THOMAS E. LOYD replied :

This is strictly a private corporation. There is nothing like emolument or pecuniary interest to any of its members contemplated. It is entirely a voluntary society, and no one has a right to membership except he be duly elected by the ballots of two-thirds of the members. The charter of incorporation from the State does not create this association. It existed before the charter. The charter gave it some privileges, but did not change the character of the association : 4 Wheaton, p. 638. Such being the character of this corporation, the courts will not interfere by *mandamus,* but leave its affairs under the control of its members : Tappan on Mandamus m. p. 137, 138, m. p. 216, 217 ; Carthew, p. 92 ; 1 Modern, m. p. 83 ; 2 Shower, 178, 191 ; 2 Barn & Ald, 622 ; 5 Barn & Ald, 899. What right did the relator acquire by becoming a member of the corporation ? He did not obtain a license to practice as a physician, for that is given him by the laws of Georgia : Code, sec. 1416–1424. Nor does his expulsion in any way conflict with that right. The rule with reference to consultation gives no positive

right, it is only negative in its character. The return discloses that there are no anatomical specimens, and but a few books, or plates, for the deprivation of which, monetary damages may be assessed in an action at law: 7 East, 353.

The rights then, if any, of which the relator has been deprived, are mere private rights, for which *mandamus* will not lie by the Code of Georgia: Code, secs 3143 and 5. But, allowing that the relator had rights, he was properly expelled under the by-laws, Article IX. We say that this is a good by-law, and one which the society had a right to pass: 7 T. R., 278. The power of expulsion and disfranchisement is incident to a corporation of this character, where no pecuniary interests are involved: 2 Kent Com., 297 , 1 Burrows, 539 ; Crabbe on Real Prop., 387.

The party received full notice under the by-law, with an opportunity to defend, but contented himself with protesting against the action of the society. The offence with which he was charged, was committed in the face of the society, and he was properly expelled. But, if the validity of the by-law is doubtful, it does not lie in the mouth of the relator to say so. He joined the society under the by-law: 5 Burrows, 2761. If this be so, it answers the counsel's argument with reference to the deprivation of property. The relator only took any property or franchise *sub modo*. He could hold it so long as he did not violate the constitution and by-laws of the society ; he consented to forfeit it if he did violate Article IX of the by-laws. Even if the proceedings have not been conducted with perfect regularity, still, if good cause for disfranchisement be shewn, the *mandamus* will not be granted: 2 Term, 177 ; 2 Cowper, p. 523.

BROWN, C. J.

1. It was insisted, in this case, that the Georgia Medical Society was in existence long before it was incorporated, and that its objects were in no way changed by its application for and acceptance of its present charter from the State. This may be very true, but its legal responsibilities were changed by the acceptance of the charter. While it remained a vol-

untary society, the courts had no jurisdiction over it, if it violated no law of the State, and its members had no property in their membership which the law could protect. But its acceptance of the charter subjected it to the supervision of the proper legal authorities having jurisdiction in such cases: 4 Wheat., 674–5; 6 Conn., 544–5.

2. When the voluntary society accepted the charter, it became a private, civil corporation, and the corporators, then in being, acquired a property in the franchise, and every person who has since become a corporator has acquired a like property. The property which the corporator acquires is not visible, tangible property; but it is none the less property, because it is invisible and intangible. It is not a corporeal hereditament; but it is incorporeal. Blackstone, in his Commentaries, volume 2, page 21, says: That incorporeal hereditaments are divided into ten sorts; one of these consists of *franchises*. Bouvier, in his Law Dictionary, volume 1, page 593, says the word franchise has several meanings, one of which he gives as follows: "It is a certain privilege conferred by grant from the government and vested in individuals. Corporations or bodies politic are the most usual franchise known to our law." The law books are full of the doctrine that persons may have a property in incorporeal hereditaments, franchises, etc.

Property, says Bouvier, volume 2, page 381, is divided into corporeal and incorporeal. The former comprehends such property as is perceptible to the senses, as lands, houses, goods, merchandize and the *like; the latter* consists in *legal rights* as choses in action, easements and *the like*. Blackstone says, volume 2, page 37, it is likewise a franchise for a number of persons to be incorporated and subsist as a body politic, with power to maintain perpetual succession, and to do other corporate acts, and each *individual member* of such corporation is also said to have a franchise or freedom. We think it well settled by these and other authorities, that a corporator in a private, civil corporation, has a property in the franchise, of which he can not be deprived without due process of law.

3. It was insisted by the learned counsel for the plaintiff in error, that the ninth by-law of this corporation, is unauthorized by the charter, and that the corporation is not justifiable in expelling a member for its violation, that to deprive a corporator of his property in the franchise under it, is to deprive him of his property without due process of law. We think the ninth by-law a proper one in view of the objects of the society, and we hold that the charter conferred upon the corporation the power to ordain and establish it, and that they have the power to expel a member when a proper case arises under it.

But we hold that the society has not an uncontrollable discretion in its construction and enforcement. They cannot, under pretext of enforcing this rule, take personal or private revenge, or make it the instrument of religious intolerance, or political proscription. When a member feels that he is aggrieved or injured by the illegal or oppressive action of the body, it is his right to appeal to the Courts for redress and protection; and it is the right and duty of the Court to investigate such charges, when properly before it, and to judge of the legality of the action of the society in expelling a member or depriving him of any other legal right.

4. The rule of law on this subject is thus stated by Judge Blackstone, volume 1, page 381. The king being thus constituted by law, visitor of *all civil corporations*, the law has also appointed the place where he shall exercise this jurisdiction, which is the Court of King's Bench, where, and where only, all misbehaviors of this kind of corporations, are inquired into and redressed, and all their controversies decided. In this State the same visitorial power of correcting the misbehaviors of these corporations, and deciding their controversies, is vested in the Superior Courts of the counties where they are located, which, in England, belongs to the King's Bench. See 5 John. Ch. R., 335.

It was contended, with much zeal and ability, by the able counsel for the defendant in error, that *mandamus* is not the proper remedy, even if we admit that the rights of Dr. Waring have been infringed, or that he has been deprived of them

by the illegal action of the society. The rule, as laid down by this Court in a number of cases, is that a person having a clear legal right under the laws of this State, is entitled to the writ of *mandamus*, if he has no other remedy to enforce it : 4 *Ga.*, 26 and 116 ; 12 *Ga.*, 170 ; 26 *Ga.*, 665.

But it is insisted that the Code, section 3143, has changed this rule, and that *mandamus* does not now lie as a private remedy between individuals to enforce private rights. We do not think this section of the Code was intended to deny the writ to the corporator, who is deprived of this rights by the corporation, when he has no other adequate remedy for their enforcement. A corporation having been created, invested with certain powers, and charged with certain duties to be performed for the benefit of the public, is not a private *individual*, in the sense of the word as used in said section of the Code, and a corporator whose rights are withheld or violated by the corporation, who is without other remedy, is entitled to the writ.

In the Commonwealth *ex rel.*, etc., vs. The Mayor of Lancaster, 5 Watts, 152, Gibson, C. J., says : " An *action* to enforce the right could not be maintained against the corporation because performance of a *corporate function* is not a duty to be demanded by action ; and unless recourse could be had to the *functionary* in the first instance, the relator might have a cause for redress without a remedy." See 4 *Ga.*, 44.

Here the discharge of a corporate duty is treated as an office or function, and the corporation as a functionary. In this sense, no doubt, the legislature, in the adoption of the Code, intended to treat them.

The object of this society, as cited in their charter, was " for the purpose of lessening the fatality induced by climate and incidental causes, and improving the science of medicine." The whole community have an interest in the success of this laudable undertaking ; and if the functions conferred by the charter, for the benefit of the public, are not faithfully performed, and one of the corporators, who has no other adequate redress, is injured by the conduct of the corporation

(the functionary,) the Courts will grant him relief by *mandamus*.

6.  The record in this case shows no sufficient cause to justify the society in expelling Dr. Waring from his rights and privileges as a corporator.  He was expelled for doing that which the law of this State not only authorizes but encourages.  His offending consists in the fact that he became one of the sureties on the official bond of a colored citizen of his county, who had been elected Clerk of the Superior Court of the county, by a majority of the legal votes cast at the election for that office, and in the further fact that he became surety on the bonds of certain other colored citizens who were charged with the offence of riot, for their appearance at Court to answer the charge as the law directs.  The very fact that the law requires the Clerk of the Superior Court to give bond and security for the faithful discharge of his duties, is sufficient to justify any citizen of the county in becoming one of his sureties, and to protect him in contemplation of law, from the imputation of having forfeited his position as a gentleman by so doing.

Again, it is not the object of law to punish citizens of this State, whether white or black, by imprisonment, for offences of which they have never been convicted.  When they are charged with violations of the Penal Code, the requirement of the law is, that they appear at the proper time and place, and answer the charge; and to secure such appearance, they are required to give bond and security, and it is only on failure to give the bond, that they can be imprisoned.  As innocent persons are often confined in prison under charges, because of their inability to give bond, the law favors bail whenever the offense is, by law, bailable.  And the law favors this even in the case of the guilty, till the trial.  This is not only best for the public, as it saves the tax-payers the expense of keeping them in jail, but it is just to the accused, who receive the legal punishment for their crimes, if guilty, under the sentence of the Court after legal conviction.  How then does a citizen forfeit his corporate rights as a member of a civil corporation, or his position as a gentleman, by doing an

act that is not only encouraged by the laws of his State, but is a positive public benefit?

But it is said Dr. Waring was not expelled for becoming surety on the bonds above mentioned, but for ungentlemanly conduct in the presence of the society. · What ungentlemanly conduct? The ninth by-law requires that "specific charges" be set forth and handed to the accused at least one month before the society takes action thereon. What specific charges of ungentlemanly conduct in presence of the society, were ever handed to Dr. Waring? ' What did he say or do in presence of the society, to forfeit his position as a gentleman? The record is silent. That silence is significant. That which is material and is not averred by the society in their answer is presumed not to exist. No ungentlemanly conduct in presence of the society is set forth in their response, and this Court must presume none existed.

Dr. Waring was convicted of the charges first mentioned, in reference to the suretyship, and brought formally before the society, and censured. To this illegal and unauthorized proceeding he submitted. But, not satisfied with this, at the next meeting of the society, he was again brought up, and his resignation demanded, and he was given till the succeeding meeting to comply with the imperious and unauthorized demand. This he declined to do. And a preamble and resolutions were then passed, setting a future day when the society would vote on his expulsion for refusing to resign, and for discourteous behavior towards the society at two former meetings. In what the discourteous behavior consisted we are not informed by the record. In the meantime, however, the gracious privilege of avoiding expulsion by resignation was still held out to Dr. Waring. When the time came for the much cherished object, by the infliction of the extreme penalty of expulsion, Dr. Waring was at home, sick, and unable to attend; but he wrote the society, disclaiming all intentional discourtesy to it or its members; and protested against the irregularity and illegality of the course resolved upon, as set forth in said preamble and resolutions. But all to no effect. His expulsion was pre-determined, and

that determination was executed. A more illegal or unjustifiable proceeding has seldom been brought before a Court.

After argument had, and a thorough examination of this case, it is the unanimous judgment of this Court, that the judgment of the Court below be reversed, and the Judge of the Superior Courts of said county is hereby instructed and ordered to grant a peremptory *mandamus*, commanding and compelling the said "The Georgia Medical Society" to restore the said Dr. James J. Waring to all his rights and privileges as a corporator in said society.