JOHN LYSAGHT *et al.*, Appellants, v. ST. LOUIS OPERATIVE STONEMASONS' ASSOCIATION, Respondents.

St. Louis Court of Appeals, December 19, 1893.

1. **Mandamus:** EXPULSION OF MEMBER BY CORPORATION. A corporation whose members have property rights in it has no power to expel a member without due notice to him of the grounds of the proceeding, and a trial at which he has been afforded an opportunity to be present. When a member has been expelled in violation of this rule, he may compel the restoration of his privileges by *mandamus*.

2. ——: ——. When the laws of a mutual benefit society provide for the payment of benefits to defray the funeral expenses of members and of their wives, the members have property rights in the society within the purview of this rule.

3. **Mutual Benefit Society:** LEGALITY OF BENEFITS. The charter of a benefit society set forth that one of the objects of the association was to afford relief, comfort and protection to members, and empowered the association to make by-laws to carry out those objects. *Held,* that the adoption of a by-law for the payment of benefits to defray the funeral expenses of members and of their wives was authorized thereby.

4. **Corporations:** DEFENSE OF ULTRA VIRES. *Held, arguendo,* that a corporation cannot plead *ultra vires* against an act by it *merely in excess* of its charter authority, where the consideration has been received by it and the transaction has been executed by the other party.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*M. McKeag* for appellants.

(1) The appellants have shown sufficient property rights in the respondent corporation to entitle them to maintain this proceeding. *Ludowiski v. Benevolent Society,* 29 Mo. App. 337; *State ex rel. v. Merchants' Exchange,* 2 Mo. App. 96; *State v. Georgia Medical Society,* 38 Ga. 608; *State ex rel. v. Benevolent Society,* 72 Mo. 146. (2) The averments of the petition are sufficiently specific. *State ex rel. v. Railroad,* 77 Mo. 143; *School District v. Lauderbaugh,* 80 Mo. 190; *State ex rel. v. Smith,* 104 Mo. 661. (3) The right of the relators to membership in this incorporated association was pecuniarily valuable, and it does appear that they were members in good standing, and that they were deprived of their right of membership without a hearing and without cause. This is not a case where they violated any of the charter provisions or by-laws, so far

as appears of record. *State v. Grand Lodge*, 8 Mo. App. 148; *Steele ex rel. v. Benevolent Society*, 42 Mo. 485.

*C. P. & J. D. Johnson* and *Joseph L. Laurie* for respondent.

The lower court properly sustained respondent's motion to quash the alternative writ, for the reason that on the face of the writ the relators were not entitled to the relief prayed for. *State ex rel. v. Governor*, 39 Mo. 388; *State ex rel. v. Odd Fellows*, 8 Mo. App. 148; *People v. The Board of Trade*, 80 Ill. 136; *State ex rel. v. Paint Co.*, 21 Mo. App. 526; *State ex rel. v. Fladd*, 26 Mo. App. 500; *People v. Masonic Ass'n*, 98 Ill. 632; *State ex rel. v. Temperance Benevolent Society*, 42 Mo. App. 485–490.

BOND, J.—This is an application for a *mandamus* by plaintiff against defendants upon the following petition, which was sworn to, to-wit:

"The petitioners herein, John Lysaght, Patrick Touhey, Philip Emmerich, John Emmerich, Paul Kostich, George W. Bickel, Denis O'Leary, William J. Campbell, John J. Schneider, R. H. Eddy and Joseph Weisemeyer, respectfully represent to the court that the General Assembly of the state of Missouri by an act entitled "An act to incorporate the St. Louis Operative Stonemasons' Association," approved February 23, 1853, duly incorporated the St. Louis Operative Stonemasons' Association, a body politic, to have perpetual succession, and provided that it may be sued.

"The objects of said association, as appears in section 2 of said act, was for the encouragement of the stonemasons' trade, to furnish deserving members employment when they need the same, to afford relief,

comfort and protection to sick of (or) unfortunate, needy, and also to promote industry, benevolence and temperance among the members of said association. For the purpose of carrying out these objects of said association it is empowered by said act to make rules and by-laws: Provided, however, that the same be not repugnant to, or against, good morals, the laws of the United States or the state of Missouri. By the terms of said act it is further provided that the business and management of said association is to be under the control of a president, vice-president, secretary, treasurer and standing committee, to be elected and chosen by the members of said association from time to time, as they may deem necessary for their interest.

"That by the terms of a by-law of said association all persons who are by occupation operative stonemasons and residents of the city of St. Louis are eligible to membership in said association, and an initiation fee of $5 is required to be paid to said association by the person initiated, and, in addition to said fee, a monthly contribution of fifty cents from the first of April to the first of December, and for the other four months of the year twenty-five cents each, to commence from the date of his election.

"It is further provided by a by-law of said association that, when a member has paid twelve months prior to his death all dues and arrears, the sum of $75 will be paid by the association towards the defraying of the dead member's funeral expenses. It is also further provided by its by-laws that, at the death of a member's wife, who has complied with the above rule, he shall be entitled to draw from the treasury the sum of $40 to assist in defraying her funeral expenses.

"Plaintiffs further state that they are all stonemasons by trade, and have worked for many years at

said trade and are residents of the city of St. Louis, and duly and properly qualified to be members of said association. That all of them were duly elected and qualified for more than one year next before the —— day of December, 1892, and paid all of the dues and initiation fees required of them as such members, and enjoyed all the privileges of membership of said association, and were all members in good standing up to said —— day of November, 1892.

"Plaintiffs further state that on some day after the said day of November, A. D., 1892, the date of which is unknown to them, without any notice to your petitioners, the said defendants, the officers and committee or high court of said association, namely, Patrick T. Walsh, its president; Christian Bauer, vice-president; Patrick J. Costello, secretary; Gustav Schneider, treasurer, and Martin Widmer, Philip Kustner, Gustav Wiegert, Robert Smithanna, Charles La Walles, Edward Harvey, John J. Byrnes, William Evans, Francis Noonan and Richard Lyons, notwithstanding that they, the plaintiffs, were all members in good standing, the said officers and committee, actuated by malice and by a determination to deprive these plaintiffs by a corrupt, arbitrary and illegal use and construction of the powers vested in them by the charter and special act hereinbefore referred to, presented to the members of said association, without notice to these petitioners, unjust, illegal and damaging charges against your petitioners, and undertook without notice to said plaintiffs to charge upon the books of said association unjust, illegal and oppressive fines against your petitioners, and afterwards dropped the petitioners' names from the rolls of the said association and expelled them therefrom, and have frequently refused to permit your petitioners to participate at the meetings of said association, and at the election of officers

and a committee for said association, as provided by said act, and have failed and refused to reinstate your petitioners to all the privileges of membership in said association, and to remit the fines thus illegally and corruptly assessed against them.

"Plaintiffs further state that the action of said officers and committee was not the exercise of a discretion lawfully pertaining to the objects of said association, as set forth in the act creating it, or the carrying out the purposes for which it was created, but a usurpation of power by them only to oppress and unjustly and illegally deprive the plaintiffs of the benefits of said association, and of the use of all the fees and intiation fees paid by them to said association.

"Plaintiffs further state that, to carry out their malicious oppression and illegal designs and determinations the said officers notified all the other members of said association, not thus expelled, that it would be a cause of expulsion should they, or either of them, work at mason work at any building where your petitioners were working, and illegally and maliciously reported the work of one McCully as blackened where your petitioners were working, and prohibited all members from working thereon.

"Plaintiffs further state that they are remediless in the premises by or through ordinary process of law, and they therefore pray this honorable court to award against said corporation, officers and committee, a *mandamus*, commanding them, and each of them, to expunge from the books of said association all illegal and oppressive fines charged against your petitioners thereon, and that their names be again placed on the rolls of said association as members thereof, and that they be reinstated to all of the privileges of said association, and for such other and proper relief as the

plaintiffs may be entitled to, and for their costs in this proceeding expended."

An alternative writ was issued commanding the defendant to restore and place the names of petitioners on the rolls of the defendant corporation, or show cause why they should not do so. The defendants appeared, and moved to quash said alternative writ for the following reasons. *First.* That the pleadings showed that no property rights were involved; wherefore plaintiffs could suffer no substantial damages and were not entitled to a writ of *mandamus.* *Second.* That it did not appear that the plaintiffs had exhausted the methods of redress which the corporation itself furnished to its members, or that they were without other adequate remedy.

The plaintiffs thereupon moved the court for a peremptory writ of *mandamus.* Upon the hearing of these motions the court overruled the plaintiff's motion for a peremptory writ, and sustained the defendant's motion to quash the proceedings, to which ruling of the court the plaintiffs duly excepted. Afterward the parties appeared, and, plaintiffs declining to plead further, the court rendered judgment for said defendants, from which an appeal was taken to this court. The error assigned on this appeal is the action of the lower court in sustaining the defandant's motion to quash.

*Mandamus* is the most appropriate remedy to restore or induct one into the enjoyment of the privileges of an incorporated association, of which he is unlawfully and unreasonably deprived. *People ex rel. Medical Society of Erie,* 32 N. Y. 187; *State ex rel. v. White,* 82 Ind. 278. The courts, however, restrict the application of this remedy to cases where the relator is deprived of some pecuniary right. Subject to this limitation, it is applicable to corporations formed for

the purpose of gain or to incorporations for religious, benevolent or social ends.

No member of any of these organizations can be deprived of any substantial right or privilege as such by the enforcement of an illegal by-law, nor by expulsion upon any ground not recognized at law as a sufficient cause for such action. *State ex rel. v. Medical Society*, 38 Ga. 608; Spelling on Extraordinary Relief, sections 1606, 1607 *et seq.* The only question, therefore, to be determined on this appeal is, whether or not the petition shows on its face that the relators have been deprived by the defendant corporation, or its officers acting in this behalf, of a pecuniary right by their expulsion from the organization; since it is clear, if it should be held that relators were illegally expelled from the corporation, that they would not have any other remedy for their restoration as specific or effectual as *mandamus*. Spelling on Extraordinary Relief, sections 1606, *supra*. *State ex rel. v. Temperance Benevolent Society*, 42 Mo. App. 485.

The question is, therefore, the legality of the action of the corporation through its officers in denying relators the benefits of membership under the allegations contained herein; for in this case the parties have substituted the petition for the alternative writ, although the latter is properly the first pleading in the proceeding, and the basis of all the issues therein, either of law or fact. *State ex rel. v. Railroad*, 114 Mo. 289; *Hambleton v. Town of Dexter*, 89 Mo. 188.

In looking to the allegations of the petition for the solution of this inquiry, we find that the expulsion was accomplished upon charges and a hearing thereon, made and conducted without any notice whatever to relators. It is true we are not specifically informed what these charges were, but the petition does state

affirmatively that the relators were at the time in no default as to their pecuniary dues, and were then in the full observance of all their duties as members; and that the charges preferred against them in their absence and without notice were malicious, illegal and unjust.    As petitioners had no opportunity of knowing or meeting the said charges, we do not see how they could be required to state them with more particularity.    It is the law of this state that corporations, whose members have property right therein, have no power of suspension or expulsion without due notice of the grounds of such action and upon a trial thereof, at which the parties charged might have been present.    *Ludowiski v. Benevolent Society*, 29 Mo. App. 337; *State ex rel. v. Temperance Benevolent Society*, 42 Mo. App. 490 *et* citations.

That relators had a "property right" in the defendant corporation we think sufficiently appears from the statements in the pleadings.

In *Ludowiski v. Benevolent Society*, *supra*, the evidence showed that the corporation had a "*sick benefit.*" In construing this phrase, the court said: "Which we understand to be an allowance to members when they are sick.    The plaintiff, therefore, had *property rights* in the society, and the society had no jurisdiction to deprive him of those rights" by expulsion.    The only difference between the facts of that case and the one at bar is that there the court deduced a property right from the evidence of a "sick benefit;" whereas, in this case, the property right *exists* by reason of a death benefit to each member of $75 for himself and $40 for his wife.

There is no difference in principle between the two cases.    The respondent argues that this pecuniary benefit secured to the members rests upon a by-law which is unauthorized by its charter.    It is doubtful, if this

point were well taken, whether the respondent, having received the consideration (initiation fees and dues) for this provision, would not be estopped from pleading a mere want of authority to enact the by-law.

The law is that, for acts *merely in excess* of charter authority corporations can not set up the defense of *ultra vires*, where the consideration has been received and the transaction executed by the other party. We think, however, the point has no support in the language of the charter empowering the respondent to adopt by-laws.

The charter in broad terms set forth as one of the objects of the association: "To afford relief, comfort and protection" to the members; and it empowered the passage of lawful by-laws to that end. We hold that this was ample authority for the by-law in question.

Respondent also insists that this "pecuniary provision" is not of that substantial character which is referred to by the courts in speaking of property rights. The answer is, that it is of the same character, *i. e.* money, which was termed a "property right" in *Ludowiski v. Benevolent Society, supra.* Nor do we accord any persuasive force to the Illinois authority (*People ex rel. v. Board of Trade*, 80 Ill. 134), cited by respondent. That case put the refusal of the court to award the writ on the ground that the board of trade was authorized to discipline, and, to that end, to suspend or expel its members, in accordance with its regulations, to which each member had agreed in joining the body. This court has taken a contrary view of the power of the courts to control the action of a board of trade in expelling a member for noncompliance with its by-laws. *State ex rel. v. Merchants' Exchange*, 2 Mo. App. 96; *Albers v. Merchants' Exchange*, 39 Mo. App. 583.

The result is that the circuit court erred in its conclusion that the petition (alternative writ) did not

show any property rights in relators, and its judgment sustaining the motion to quash on that ground is reversed and the cause remanded.    All concur.