## CARL FROELICH, Respondent, v. MUSICIANS MUTUAL BENEFIT ASSOCIATION, Appellant.

### St. Louis Court of Appeals, March 18, 1902.

1. **Voluntary Society: RIGHT OF, TO EXPEL MEMBER: EQUITY.** The decisions of any kind of a voluntary society or association in admitting members, suspending or expelling them, are of a quasi-judicial character. In such cases the courts never interfere except to ascertain whether or not the proceedings were in good faith and whether or not there was anything in the proceeding in violation of the laws of the land.

2. ———: ———: ———. A court of equity will not interfere to restore membership to one who has been expelled from a voluntary association not in pursuance with the laws of the association and there were property interests involved.

3. ———: ———: ———. In the case at bar, the by-law by which the association undertook to expel plaintiff, was not adopted at a regular meeting of plaintiff, nor was it proposed in writing one month before its adoption as required by article 13 of the constitution of the association. It failed, therefore, to become a by-law that was binding on the plaintiff.

4. ———: ———: JURISDICTION. So long as an association remains a voluntary one the courts have no jurisdiction over it and the courts will not interpose between it and a member except for the sole purpose of protecting an interest the member may have in the property of the association.

5. ———: ———: PROPERTY RIGHTS IN VOLUNTARY ASSO-
CIATION. Where the laws of a mutual benefit society provide for
the payment of benefits to defray funeral expenses of its members
and their wives, the members have property rights in the society.

6. ———. And in the case at bar, the plaintiff has such a pecuniary
interest in the association as to give the court jurisdiction to enjoin
the association from depriving him of his membership by proceed-
ings not authorized by the laws of the association.

7. Voluntary Association: WHEN A TRUST. In the case at bar,
the by-laws impose on the members of the association a most slavish
observance of the most stringent rules and regulations in restraint
of trade; so strict and far-reaching are they that no musician in
the city of St. Louis, and for that matter in any city of the country,
can find employment as a musician unless he is a member of the
association. Such a confederation and combination is a trust,
pure and simple.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P.
Spencer,* Judge.

REVERSED *(with directions).*

*Frank K. Ryan* for appellant.

The position of the respondent is fatally inconsistent.
He denies the right of his fellow-members, with or without
by-law therefor, to make him aid them in strikes; but still
he would enjoy the benefits derived from strikes and similar
tactics. He invokes the aid of a court of equity on the only
possible ground, that of a property right; which he claims
under by-laws providing for sick and mortuary benefits. Yet
these by-laws can not, for the purposes of this case, be sepa-
rated from and must be considered with certain restrictive
by-laws that make all the regulations of the appellant labor
union a contract in restraint of trade, and, therefore, non-
enforcible in the courts by either the appellant or by the
respondent. State ex inf. v. Fireman's Fund Ins. Co., 152
Mo. 43; Moore v. Bennett, 140 Ill. 69; Pomeroy's Equity,

note 1, sec. 934; Rigby v. Connol, 14 Ch. D. 482; Chamberlain's Wharf Limited v. Smith (1900), 2 Ch. 695; Parker v. Toronto Musical Protective Association, Canadian Law Times, vol. 22, p. 3.

*Kortjohn & Kortjohn* for respondent.

(1) Injunction is the proper proceeding to restrain the trustees or directors of voluntary societies from improperly expelling members. Lysaght v. St. Louis Co-operative Stonemasons' Assn., 55 Mo. App. 538; Ludowiski v. Ben. Society, 29 Mo. App. 337; State ex rel. v. Temperance B. Soc., 42 Mo. App. 490; Albers v. Merchants' Exchange, 39 Mo. App. 538. (2) In this State, trades unions are recognized as legal by the statutes. Secs. 2155, 2156, 2157 and 2158, R. S. 1899. And by our Supreme Court in Hamilton-Brown Shoe Co. v. Sazey et al., 131 Mo. 212.

BLAND, P. J.—Plaintiff is a member of the defendant association. During the strike of the employees of the St. Louis Transit Company in the city of St. Louis, in the spring and summer of 1900, plaintiff rode on the street cars of the transit company for which he was fined five dollars by the defendant. Refusing to pay this fine the association was proceeding to expel him when he procured from the circuit court of the city of St. Louis an order restraining the defendant from expelling him. On final trial the injunction was made perpetual. Defendant appealed. The association is unincorporated and is composed exclusively of musicians. Its object, as expressed in article two of the articles of the association, is as follows:

"Art. 2. The object of this association is to unite the instrumental portion of the musical profession, for the better protection of its interest in general and the establishment of a

Vol 93, app—25.

minimum rate of prices to be charged by the members of said association for their professional services and the enforcement of good faith and fair dealing between its members."

The association had adopted an elaborate price list for musical entertainments, performances and services to be rendered by its members. Among its by-laws are the following:

"Sec. 1. It shall be the duty of every member of this association to refuse to perform in any orchestra or band in which any person or persons are engaged in playing who are not in good standing with this association, except organists, directors of musical societies, members of traveling companies, soloists, quartettes and quintettes, who play only their own series of concerts, and contain no withdrawn or suspended members of this association. Traveling companies shall be limited to a stay of two weeks within the jurisdiction of this local. Also amateur orchestras giving concerts for their own benefit with provision, however, that member or members receive the price provided for such engagements in the price list. Any member who shall have violated this section shall be deemed to have committed a breach of good faith and fair dealing between himself and the members of this association, and shall be punished in accordance with article 60, section 4, of the by laws.

"Sec. 2. It shall be considered a breach of faith and violation of the price list for any member soliciting, or in any manner expressing himself to the effect that he desires or will accept any engagement for less than the stipulated price adopted by the association, and it shall be acceptable proof of the charge to produce a sworn affidavit of non-members to corroborate such charges.

"Sec. 3. It shall be a like offense for a member to offer another member an engagement for less price than the price laid down in the price list.

"Sec. 4. It shall be the duty of every member to report immediately to the recording secretary any and all violations

of the constitution, by-laws and rules of this association; and a failure to do so shall also be deemed a breach of good faith.

"Sec. 5. Any member who accepts tickets as part payment, gives or promises presents, allows himself to be fined, pays extortionate prices for an article, or any form of recompense, calculated to defeat the object of these by-laws, shall be subject to the same penalties as laid down in article 9, section 4.

"Sec. 6. Members of this association will not be permitted to volunteer their services for any purpose whatever, without a permit from the board of directors.

"Sec. 10. No band or bands belonging to the association shall be allowed to play in any parade, or for any entertainment of any character whatever, where a non-union band or bands are playing except (a) when such band or bands do not belong to this jurisdiction, and are escorting societies and other bodies not belonging to this city; or etc. . . .

"Sec. 21. No member of this association will be allowed to play with non-members within a radius of fifteen miles of the St. Louis courthouse.

"Sec. 22. Before sending out of the city for musicians, leaders must apply to the board of directors to see if competent men can not be procured at home from the association. Any violation of the above section shall be subjected to a fine of $10 or more, at the discretion of the board of directors.

"Sec. 28. No band shall be permitted to carry a banner or transparency for advertising purposes in parades where the music is furnished by contract with the Musicians' Mutual Benefit Association. Any violation of the above will be subjected to a fine of $10.

"Sec. 29. That no member shall be permitted to make a contract to furnish an orchestra for any theatrical season engagement, where he can not be personally present.

"Sec. 30. Leaders or managers of theatre orchestra must engage and make contracts with the members of their orchestra

for the following season, and file the same with the secretary on or before May 1. Any violation of the above will be subject to a fine of $25.

"Sec. 31. That members of orchestras or bands can only be disengaged or discharged by the leader or manager in said orchestra or band for neglect of business, or incapability, or unbecoming conduct, and that no personal feeling shall justify any leader or manager in discharging a member of his orchestra or band during the season without consulting the board of directors," and also the following by-laws under article five:

"Sec. 1. At the death of a member having been in good standing for the term of one year, counting this period of one year, from his first admission or from the date of his last reinstatement, this association will pay out of the general fund the sum of $50 towards defraying his funeral expenses, or to his legal heirs.

"Sec. 2. On application for relief from any member, the board of directors shall have the power to donate such sums as they in their discretion shall deem proper from the urgency of the case; not to exceed $10 at any one application nor more than once in the same year to the same person."

Appropriate penalties are provided for violations of these by-laws. The governing body of the association is made up of its officers. On May 18, 1900, a special meeting of the association was held by its members and a resolution adopted providing for a fine of five dollars against any member of the association who might ride on the St. Louis Transit Company's lines of street cars. At that time there was no by-law of the association concerning strikes, sympathetic strikes or boycotts. Article thirteen of the articles of the association concerning amendments is as follows:

"Propositions to repeal, alter, add to, or amend any of the foregoing articles of this constitution and its by-laws, must be made in writing, at a regular meeting one month before

action can be taken thereon, when, if a majority of all the
members then and there present shall vote, by ballot, in favor
of said amendment, or amendments, then only shall it or they
stand as a law or laws of the association."

Plaintiff was not present at the adoption of the resolu-
tion or by-law of May 18, nor did he ever thereafter assent
to it, nor was this by-law ever submitted at a regular meet-
ing or any action taken on it after the meeting of May 18.
The two principal contentions made by appellant, are, first,
that the by-law of May 18, for violation of which plaintiff
was fined, was not legally adopted and was void and that no
fine could be rightfully imposed on him by the association for
its violation, and second, that the association is an unlawful
one, having for its object the restraint of trade and that the
courts will not aid one to retain his membership in such
an association.

In Conley v. Masonic Mutual Benefit Association, 9 L.
R. A. 428, the Supreme Court of Connecticut said, "The
decisions of any kind of a voluntary society or association in
admitting members, suspending or expelling them are of a
quasi-judicial character. In such cases the courts never in-
terfere except to ascertain whether or not the proceedings were
pursuant to the rules and laws of the society and whether or
not the proceedings were in good faith, and whether or not
there was anything in the proceedings in violation of the laws
of the land." In Ryan v. Cudahy, 157 Ills. 108, s. c. 49
L. R. A. 353, it was held that, "Where one had been expelled
from a voluntary association not in pursuance with the laws
of the association and there was a property interest involved,
a court of equity would interfere to restore his membership."

The by-law of May 18 was not adopted at a regular meet-
ing of the association, nor was it proposed in writing one
month before its adoption as required by article thirteen of the
constitution of the association. It failed, therefore, to become
a by-law that was binding on the plaintiff who was not present

at its adoption and had never assented to it. To enforce this by-law against plaintiff was not proceeding against him according to the laws of the association, and to expel him for the non-payment of the fine imposed for a violation of that by-law would not be in pursuance of the laws of the association. But this is not enough in itself to authorize a court of equity to interfere. It must further appear that some property or civil right is involved in the controversy. So long as an association remains a voluntary one the courts have no jurisdiction over it and the courts will not interpose between it and a member except for the sole purpose of protecting an interest the member may have in the property of the association. State ex rel. Georgia Medical Society, 38 Ga. 608; Baird v. Wells, L. R. 44 Ch. Div. 661; Littlejohn v. Blackburn, 45 L. J. Ch. N. S. 219; Rigby v. Connol, 28 Week. Rep. 650; Grand Lodge K. of P. v. People ex rel. Waldek Lodge No. 136 K. P., 60 Ill. App. 550; Von Arx v. San Francisco Gruetli Verein, 113 Cal. 377. The converse of this doctrine is true, i. e., that where a pecuniary or civil right is involved in the controversy and the association is a lawful one, a court of equity will interfere to protect a member from an unlawful or arbitrary suspension or expulsion. Cases, supra. In Lysaght v. St. Louis Operative Stonemasons' Ass'n, 55 Mo. App. 538, it was held that, "Where the laws of a mutual benefit society provide for the payment of benefits to defray the funeral expenses of its members and their wives, the members have property rights in the society." The by-laws of the association provided that the sum of fifty dollars shall be contributed by the association to the funeral expenses of its members. Following the rule in the Lysaght case we hold that plaintiff has such a pecuniary interest in the association as to give the court jurisdiction to enjoin the association from depriving him of his membership by proceedings not authorized by the laws of the association. In respect to the second contention of defendants, "that the association is an unlawful

one being in restraint of trade," it will suffice to refer to its by-laws (supra) in support of this contention.   These by-laws impose on the members of the association a most slavish observance of the most stringent rules and regulations in the restraint of trade; so strict and far-reaching are they that no musician in the city of St. Louis and for that matter (if the allegations of the answer be taken as true, that the St. Louis association is but a local and that the association extends throughout the whole of the United States and has locals in all of the principal cities of the United States) in any city of the country can find employment as a musician unless he is a member of the association.   Such a confederation and combination is a trust pure and simple.   State v. Firemen's Fund Ins. Co., 152 Mo. l. c. 43; Moore v. Bennett, 140 Ill. 69.

Combinations and confederations in restraint of trade have been denounced by the common law from time immemorial as being against public policy.   The Legislature of this State and the Legislatures of most, if not all, of the other States have made trusts the object of special legislation with a view to their suppression and prevention.   The plaintiff is in the attitude of asking the court to keep him where the law says he has no right to be and to retain him in a position where he may aid in the support and maintenance of an illegal association and where he may continue to support and keep up a monopoly of the services of musicians.   Courts have never dealt with monopolies, except to restrain or destroy them, and we decline to depart from this wholesome rule in this case and reverse the judgment with directions to the trial court to dissolve the injunction and to dismiss plaintiff's bill.

Judges *Barclay* and *Goode* concur on the ground that plaintiff, upon the admitted facts, is not in position to obtain of a court of equity the relief herein prayed.

ON MOTION FOR REHEARING.

BLAND, P. J.—The learned counsel for respondent in his motion for rehearing seems to have misconceived both the letter and the spirit of the opinion delivered in this case. The opinion does not, as counsel for respondent contends, denounce or hold as illegal, trade unions. The court was not dealing with trade unions as such, but with a monopoly erroneously styling itself a trade union. Trade unions are authorized by our statutes and are approved and supported by the enlightening sentiment of all right-thinking men, and their benefit, both to their members and the general public, are seen and appreciated by every unprejudiced mind. But when a so-called trade union becomes both a tyrannical master over its members and monopolizes a trade for the protection of which it was ostensibly organized, it puts itself beyond the pale of the protection of the courts and outside of the statutes authorizing trade unions, and no member of such union can have any standing in a court of equity where he seeks to enforce the monopolistic features and objects of the organization. The court found the unfortunate respondent in this situation and while we recognized that the order to which he belonged had unjustly and arbitrarily dismissed him from the organization we found ourselves unable to afford him any relief for the sole reason that he asked the court to sustain and uphold a monopoly, and not because he belonged to a labor union.

The motion for rehearing is denied. All concur.