THE STATE ex rel. B. CLARK HYDE, Appellant, v. JACKSON COUNTY MEDICAL SOCIETY.

Division One, July 27, 1922.

1. **MANDAMUS: Invocation: Refusal: Unclean Hands.** Mandamus may be invoked when relator desires to have the court command some action to be done which ought to be done and without the doing of which he has no adequate remedy. But it is a discretionary writ, partaking in some respects of the nature of equity, and

relator cannot have it if he comes with unclean hands and has been guilty of misconduct in connection with the very thing he seeks by it to compel respondent to do.

2. ———: ———: ———: ———: Indecent Letter: Expulsion from Medical Society: Restoration. Relator, a member of respondent Medical Society, made application to become a member of the Medical Library Club, made up of members of the Medical Society and a practical part of the latter organization. His application being refused, he wrote to one of the members of the club an obscene letter, with the request that it be transmitted to the club, and on its reception and on account of it the respondent Medical Society instituted proceedings to expel him from membership in the society. To expel him required the votes of three-fourths of the members, and the vote on his expulsion lacked one of the requisite number. An appeal was taken by respondent to the State Medical Society, and that body determined the appeal by directing respondent to expel him, which was accordingly unanimously done, and thereupon relator instituted proceedings in the circuit court by mandamus to compel the respondent Medical Society to rescind its last action and restore him to membership therein. The writ was denied, and relator appeals. His misconduct consisted in writing the obscene letter connected with the denial of his application for membership in the Library Club, which referred to different members of the respondent Medical Society and the wife of one of them in language too vile to be printed. In his reply relator admits that the letter refers to members of the club, who are also members of respondent. *Held*, that a court, in view of his misconduct connected with the very matter of his expulsion, will not, by its writ of mandamus, compel his restoration to membership.

3. ———: Membership in Medical Society: Proprietary Interest. A physician has no such severable proprietary interest in a medical society as entitles him to be restored to membership therein by mandamus, although it owns real estate worth twelve thousand dollars and prior to his expulsion he paid his dues. A member of a voluntary society, having no transferable or transmissible interest therein subject to the payment of debts or descent to heirs, has no pecuniary or property right in the property which it possesses as a mere incident to the carrying out of its objects as will justify the invocation of the extraordinary writ of mandamus to restore him to membership.

4. ———: ———: ———: Chartered Under Statute. Nor does the fact that the voluntary society was organized or chartered under

295 Mo.—10

the statute relating to religious or benevolent associations affect the right of an expelled member to the writ of mandamus to compel his restoration to membership therein. As in churches, the member's right to membership in a purely voluntary association, whose interest in its property is only incidental to his membership, ceases upon his withdrawal or expulsion in accordance with its by-laws.

5. ———: **Discretion: Findings: Appeal.** A refusal to issue a writ of mandamus will not be reversed on appeal unless a flagrant abuse of discretion by the trial court is clearly shown; and likewise the findings of the trial court in a mandamus proceeding, as to the facts of the case, if supported by substantial evidence, will not be disturbed on appeal.

## Mandamus.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*Henry S. Julian* and *J. LeRoy Smith* for appellant.

(1)    Mandamus is the proper remedy to restore appellant to his rights when he has been illegally expelled or otherwise excluded from a corporation and to restore him to all rights of membership. 26 Cyc. 443, sec. C; Albers v. Merchants Exchange, 39 Mo. App. 588; Lysaght v. Operative Stone Mason Assn., 55 Mo. App. 544; State ex rel. v. Merchants Ex., 2 Mo. App. 98; Bacon on Benefit Societies, secs. 109 and 442; Crocker v. Old South Society, 106 Mass. 490; Barrows v. Mass. Med. Society, 12 Cushing (Mass.) 402; Sleeper v. Franklin Lyceum, 7 R. I. 523; People v. Medical Society, 24 Barb. (N. Y.) 570; State v. Georgia Med. Society, 38 Ga. 608; People v. Mich. Med. Soc., 22 Mich. 86; State v. Chamber of Commerce, 20 Wis. 68; Society v. Commonwealth, 52 Pa. St. 125; Commonwealth v. Society, 2 Binnie, 441; Commonwealth v. Franklin Ben. Society, 10 Pa. St. 357; Evans v. Phil. Club, 50 Pa. St. 107; State v. Carteret Club, 40 N. J. L. 295; High on Extraordi-

nary Legal Remedies (2 Ed.) secs. 287, 291; State ex rel.
v. White, 82 Ind. 278.   (2)   Nothing the Missouri State
Medical Association may have done as an unincorpo-
rated body could have any binding effect upon the cor-
poration after it received its charter from the State in
1904.   Dartmouth College v. Woodward, 4 Wheat. (U.
S.) 674; State v. Ga. Med. Society, 38 Ga., 625; Fuller
v. Trustees, 6 Conn. 544.   (3)   A membership in a cor-
poration is a valuable franchise that the law protects
against confiscation.   Sibley v. Carteret Club, 40 N. J.
L. 295; Green v. African Society, 1 S. & R. (Penn.) 254;
Comm. v. Penn. Society, 2 S. & R. 141; Diligent Fire
Co. v. Comm., 75 Pa. St. 296; Comm. v. Guardian of
of Poor, 6 S. & R. 469; Comm. ex rel. v. German So-
ciety, 15 Pa. St. 251; Washington Ben. Soc. v. Bacher,
20 Pa. St. 425; People ex rel. v. Sailors Snug Harbor,
54 Barb. (N. Y.) 532; People ex rel. v. St. Francis Ben
Soc., 24 How. Prac. 216.   (4)   Expulsion must be in
conformity with law.   Albers v. Merchants Exchange,
39 Mo. App. 583; State ex rel. Young v. Benefit Society,
42 Mo. App. 485; Lysaght v. Operative Stone Mason
Assn., 55 Mo. App. 545; State ex rel. v. Medical Society,
38 Ga. 608; Spelling on Extraordinary Relief, sec. 1606
et seq.

*Scarritt, Jones, Seddon & North* for respondent.

(1)   As the matter was within the sound discre-
tion of the trial court the refusal of the writ is not re-
viewable here.   (a)   Mandamus is a discretionary writ.
State ex rel. v. Bridge Co., 206 Mo. 135; State ex rel. v.
Albin, 44 Mo. 346; State ex rel. v. Newman, 91 Mo. 445.
Mandamus is law action, not an equity suit.   26 Cyc.
141; Bright v. Canal Co., 3 Colo. App. 170.   (b)   The
writ may be denied on moral grounds and without re-
gard to the technical merits of the right asserted.   State
ex rel. v. Martin, 195 Mo. App. 366; Tel. Co. v. State,
165 Ind. 492; State ex rel. v. Temperance Benev. Assn.,

42 Mo. App. 485. (c) The refusal to issue a writ of mandamus will not be reversed on appeal unless a flagrant abuse of discretion by the trial court is clearly shown. Vincent v. Ellis, 88 N. W. (Iowa) 836; Tuttle v. Iron Natl. Bank, 62 N. E. (N. Y.) 761; City of Little Rock v. United States, 103 Fed. 418, 426; Moody v. Fleming, 4 Ga. 115; People v. Van Wyck, 157 N. Y. 495; People v. Jeroloman, 139 N. Y. 14; Chesebro v. Babcock, 59 Conn. 213; People v. Interurban St. Railroad, 177 N. Y. 296; Achuff's Appeal, 12 Pa. Sup. 573. (d) Where an order refusing a writ of mandamus does not state the grounds of decision and the writ may have been refused as a matter of discretion, the order must stand on appeal. People v. Van Wyck, 157 N. Y. 495; People v. Jeroloman, 139 N. Y. 14. (e) Appellant makes no contention that there was any abuse of discretion by the trial court, much less, such a flagrant abuse as would warrant review by this court. And there is no wonder. Could any one have the temerity to contend that a court had abused its discretion in refusing to compel a body of gentlemen to receive and retain in their social and ethical organization as a member one who had deliberately written the filthy and scurrilous letter here in question, wherein he refers to a large number of the members of the society in the vilest language? (2) The admission of relator that he wrote the letter, which is the basis of the charges against him, was alone sufficient to justify the trial court in denying the writ of mandamus. State ex rel. v. Temp. Ben. Assn., 42 Mo. App. 485; State ex rel. v. Martin, 195 Mo. App. 370. (3) The trial court was without jurisdiction to issue the writ in this case for several reasons: (a) Whatever may be the rule in other jurisdictions, it is thoroughly established in this State, that the court will not entertain a mandamus proceeding unless property rights are directly involved. Lysaght v. Assn., 55 Mo. App. 538; Crutcher v. Order of Ry. Conductors, 151 Mo. App. 622, 630; State ex rel. v. Grand Lodge, 8 Mo. App. 148, 153; Froelich v. Mu-

sicians Assn., 93 Mo. App. 383, 390.   The same rule obtains in many other jurisdictions.   Franklin v. Burnham, 82 N. Y. Supp. 882; People v. Masonic Assn., 98 Ill. 635; Wellenvoss v. Grand Lodge, 103 Ky. 415; Clark v. Wallace, 20 Ky. L. 154; White v. Brownell, 4 Abb. P. (N. S.) 191; People ex rel. v. Board of Trade, 80 Ill. 134; Sale v. Baptist Church (Inc.), 62 Iowa, 26; Lawson v. Hewell, 118 Cal. 613.   (b)  Incorporation of society makes no difference.   It has a dual existence and in discipling its members it is not acting in a corporate capacity.   Sale v. Baptist Church (Inc.) 62 Iowa, 26; Lone Star Lodge v. Cole, 131 S. W. 1180; Manning v. San Antonio Club, 63 Tex. 166; Hardin v. Baptist Ch. (Inc.), 51 Mich. 137.   (c)  Relator, by every proper test, has no property right involved in this case.   He had nothing that he could sell, convey or that would pass by will or inheritance.   Membership in a social society of this kind, not being organized for pecuniary gain or profit and being forbidden by statute to engage in matters of gain or pecuniary profit to the members, and where the members have the mere right to use the property of the corporation and to enjoy its advantages, is a mere privilege of membership and not a property right.   State v. Odd Fellows' Grand Lodge, 8 Mo. App. 148; Crutcher v. Order, 151 Mo. App. 630; Lawson v. Hewell, 118 Cal. 613; Franklin v. Burnham, 82 N. Y. Supp. 882; 1 Bacon on Life & Accident Ins. (4 Ed.) sec. 70; Manning v. San Antonio Club, 63 Texas, 166; South Shore Country Club v. People, 228 Ill. 75; 5 C. J. 1357. (d)  The court is without jurisdiction because relator has not exhausted his rights within the association before appealing to the court.   It was admitted by relator at the trial that after his expulsion he prosecuted no appeal to the State Medical Association.   Relator, as a member of the State Association, agreed to all its by-laws.   One may not appeal to the courts with regard to membership in this kind of an association until he has exhausted all his rights and remedies within the

association. Crutcher v. Order, 151 Mo. App. 622, 630; Correia v. Supreme Lodge, 218 Mass. 305; Screwmans Ben. Assn. v. Benson, 76 Tex. 552; Mead v. Sterling, 62 Conn. 586; McAlees v. Iron Hall, 13 Atl. (Pa.) 755; Zeliff v. Knights of Pythias, 53 N. J. L. 536; Bauer v. Knights of Pythias, 102 Ind. 262; Camp No. 6 v. Arrington, 107 Md. 319. (e) A demand for reinstatement was necessary before bringing this action. State ex rel. v. Associated Press, 159 Mo. 410; State ex rel. v. Lesueur, 136 Mo. 452, 459. (4) Respondent, though incorporated, may be subordinate to another society. There is nothing to the contention that because respondent is incorporated it cannot be correlated with or controlled in matters of qualifications for and discipline of members by another and higher body, The Missouri State Medical Association. Com. v. Heilman, 241 Pa. 374; 1 Bacon on Life & Accident Insurance (4 Ed.) sec. 92; Gorman v. O'Connor, 155 Pa. 239; Watson v. Jones, 13 Wall. 679; Chamberlain v. Lincoln, 129 Mass. 70; Osceola Tribe v. Schmidt, 57 Md. 98.

ELDER, J.—This is a proceeding in mandamus seeking to compel respondent to rescind its action in expelling relator from membership in the respondent society, and to restore his name upon the roll of members. The cause comes to this court upon certification from the Kansas City Court of Appeals. By the majority opinion of that court the judgment was reversed and the cause remanded with directions to the trial court to issue the peremptory writ. ELLISON, J., dissented in a separate opinion, and deeming the majority opinion in conflict with certain decisions of the St. Louis Court of Appeals and of this court, asked that the cause be certified here for final determination.

The material facts in the case, and the law applicable thereto, are thus stated in the minority opinion:

"It appears that the Kansas City Medical Library Club is made up of the members of the respondent, Jack-

son County Medical Society, and is a practical part of that organization. The relator, then a member of the respondent society, made application to the Library Club to become a member thereof. His application was refused, and he was so notified. He wrote a letter acknowledging the notice to one of the members of the club, with the request that it be transmitted to the club. The letter is too obscene to be printed in full.

"On account of this letter the respondent, Jackson County Medical Society, instituted proceedings to expel him from that society. It required a three-fourths majority to put him out and the vote lacked one of the requisite number.

"It seems that an appeal was taken by respondent to the State Medical Society, and that body determined the appeal by directing the respondent to expel him, and the latter did so by a unanimous vote; whereupon the relator instituted this proceeding in mandamus in the Circuit Court of Jackson County, which court refused a peremptory writ and relator has brought the case here.

"1. Mandamus is invoked when it is desired to have some action commanded to be done when nothing else will adequately subserve the end sought. In deciding whether error was committed in denying a writ, it is important to remember that while the writ should not be capriciously denied, its issuance is highly discretionary. [State ex rel. v. McIntosh, 205 Mo. 616, 634; State ex rel. v. Wilder, 211 Mo. 305, 319; State ex rel. v. Bridge Co., 206 Mo. 74, 137.] In the last of those cases it is said, at page 136, that 'mandamus being a discretionary writ, will not be granted where it would work injustice, or introduce confusion and disorder, or operate harshly, or where it would not promote substantial justice.' Again, at page 137, it is said that 'the court may refuse it [the writ] even though warranted by the rules of law, if hardship or injustice would result to the opposite or third parties from granting it.'

Again, on the same page, it is said that in the exercise of its discretion 'the court will consider all of the circumstances, reviewing the whole case, with due regard to the consequences of its action.'

"So in considering the expediency of the writ, the primary question is by no means confined to what the respondent has done to the complaining relator. It may well be said that a thing of equal importance is to ascertain what has been his conduct, as it relates to the matter in controversy. Mandamus, in its exceptional traits, partakes in some respects, of the nature of equity, in which forum it is a maxim that he who applies for relief by this writ must come with 'clean hands,' else the law, regardless of merits, will decline to interfere in his behalf. [Turner v. Fisher, 222 U. S. 204, 209; Commonwealth v. Henry, 49 Pa. St. 530, 538; Ansonia v. Studley, 67 Conn. 170, 180; People ex rel. v. Jeroloman, 139 N. Y. 14, 18; 2 Spelling on Injunctions and Extraordinary Remedies, sec. 1380; High on Extraordinary Legal Rem., sec. 26; Merrill on Mandamus, sec. 68.]

"These authorities establish, beyond question, that, like in equity, the applicant for relief must present himself with 'clean hands' and we naturally turn to the rule in equity to show what the application of the maxim is. In 1 Pomeroy's Equity Jurisprudence, sec. 399, it is said that the misconduct of the applicant must be 'connected with the matter in litigation; . . . it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern.' Citing that text, it is said in Ashe-Carson Co. v. Bonifay, 147 Ala. 376, 384, that, 'Whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge

his right, or to award him any remedy. He who does iniquity, shall not have equity.'

"In Woodward v. Woodward, 41 N. J. Eq. 224, it is said that, 'The iniquity which deprives a suitor of a right to justice in a court of equity, is not general iniquitous conduct, unconnected with the act of the defendant which the complaining party states as his ground or cause of action, but it must be evil practice or wrongful conduct in the particular matter or transaction in respect to which judicial protection or redress is sought.' The same rule is stated in Kirby v. Union Pac. Co., 51 Colo. 509, 524; Kinner v. Ry. Co., 69 Ohio St. 339, 344; City of Chicago v. Stock Yards Co., 164 Ill. 224, 238.

"While a man may be guilty of the highest crimes, or, in his daily walk may be guilty of the grossest misconduct; yet, unless such misconduct connects with the matter in controversy he is not to have his prayer denied. But where, as in this case, the misconduct consists in writing an obscene letter referring to, connecting with, and indeed, wholly made up of, the identical matter in controversy, there is no dissent from the proposition that he shall not have relief by mandamus.

"In this case relator admits that when he was notified that the Library Club had refused his application for membership, he wrote the letter, addressing it to Dr. J. S. Weaver, with the request that he transmit it to the Club. I think from what is said of the letter in the majority opinion, one does not get its true character in a full sense; nor is it certain, from that opinion, that one will understand for whom the letter was intended. I think it shows on its face for whom it was intended; besides, relator admits in his reply that it refers 'to the members of the Kansas City Library Club.' The letter, as stated above, is too vile and filthy for entire reproduction. I herewith set it out, using blanks for unprintable words:

" 'Kansas City, Mo.,' Dec. 20, 1917.

" 'Dr. J. S. Weaver,
1221 Rialto Building,
Kansas City, Mo.

" 'My dear Doctor:   The enclosed statement, recently received, indicates that you are an official of the Kansas City Library Club, and in returning it to you as such, I desire to make the following comment, with the request that you transmit the same to the above named club.

" 'A short time ago Dr. R. L. Sutton, without suggestion or solicitation on my part, urgently requested me to sign an application for membership in the K. C. Library Club.  He now informs me that the application has been refused by vote of those in control, predicated, I presume, upon the litigation in which I have been involved of late and which recently terminated in my vindication.   In view of this vindication, I had the impression that the Library Club wanted all the members it could get from the Jackson County Medical Society.

" 'I conclude that the refusal to admit my application is based on personalities.   In view of the venality and corruption displayed by certain doctors hired by the prosecution in my case, I do not hesitate to denounce this further attempt to discredit me.

" 'Just who is responsible, I cannot say; it may have been the oculist, who, remembering the disgraceful manner in which his parent was shot to death in his office, should have used the liberality that a better intelligence would have prompted; it may have been the surgeon with Teutonic name and Hun training, of whom one might inquire for how long he had been ——— his present wife before his former wife obtained a divorce; it may have been one bone-setter, the off-spring of a self-confessed abortionist; it may have been one so-called paediatrist, hypocrite and professional ———; who ever it was, the refusal to admit smacks of the immorality of the prostitute who smugly announces that all women are without virtue, because if that were true she would be on a par with any.

' "In conclusion, you may tell the bunch of sons-of———, among the membership of the Kansas City Library Club, to go and ——— themselves.

" 'With assurance of appreciation and esteem to Dr. Sutton and yourself, I remain,

" 'Yours very truly,
" 'B. Clark Hyde.'

''Words omitted would not be repeated by men even in private conversation. A part of them refers to the wife of one of the members.

''Now the question is, shall a court lend its aid to one who confesses to have written such a letter? In view of the nature of the writ of mandamus, as we have set out above, shall a court be required to restore a person of that character to membership and social intercourse with the very persons to whom he sent the letter?

''2.   The other reason why the writ should be refused is that relator has not that severable proprietary interest in the respondent society which is a necessary requisite to his right to relief. It is alleged that the society owned a piece of real estate worth $12,000 and that he paid his dues. But that does not show a right in him sufficient to ground an application for a writ of mandamus. [Lawson v. Hewell, 118 Cal. 613, 621, 622; Franklin v. Burnham, 82 N. Y. Supp. 882; People v. Board of Trade, 80 Ill. 134, 136; People v. Masonic Benefit Assn., 98 Ill. 635, 637; Sale v. Baptist Church, 62 Iowa, 26, 29; Wellenvoss v. Grand Lodge, 103 Ky. 415.] In fact relator's case concedes he must have a property right, for to show that he has he alleged in his application for the writ that respondent had a piece of real estate on a certain street in Kansas City worth $12,000.

''We have not been cited to a case on this question from our Supreme Court, but the St. Louis Court of Appeals several times has stated that a property right in the relator must exist in order to justify interference by the courts. [Lysaght v. Stonemasons' Assn., 55 Mo. App. 538, 544-547; Froelich v. Musicians Ben. Assn., 93 Mo. App. 383, 389-390.]

''The courts have generally held that rights in the nature of insurance in benevolent or mutual benefit societies are property rights which will be protected by extraordinary writs. And so where there is membership in clubs, or other societies, for the pleasure of the

members, the membership being represented by stock, they have valuable, severable property rights, which they may transfer to others and which would be subject to the payment of debts, or descend to heirs. But a member of a voluntary association like the one before us, not organized for profit, with no severable pecuniary interest in the property which it possesses merely as an incident to its existence, has no such pecuniary property right as will justify the extraordinary remedy by mandamus. Otherwise, the court, through that writ, would be called upon to test the expulsion of members of churches, or social associations. The members of such associations may change, but it has not been thought that they, their creditors or their heirs, as the case may be, have any interest in the property of the society. The church, or other society, may own property as a necessary incident in carrying out its object, but no retiring member takes any share of the property with him. The by-laws permit his voluntary withdrawal, if his dues are paid up. Such withdrawal severs his connection with and interest in, the society, with no suggestion that he has any property right.

"Nor does the fact that such voluntary societies are charted or organized under the statute relating to religious or benevolent associations affect the question, as will appear by examination of the foregoing authorities.

"In the cases cited on this subject in the majority opinion, I find State v. Georgia Med. Society, 38 Ga. 608, the only one applicable, and that case concedes that a violated property right is necessary to relief by mandamus. But it is there decided that the right of membership is *per se* a property right, and fails to note that the property right must be a severable, proprietary right, as is shown in the foregoing cases.

"For the foregoing reasons I think the judgment should be affirmed; and deeming the foregoing decision to be in conflict with Lysaght v. St. Louis Operative

Assn., 55 Mo. App. 538, 544-547, and Froelich v. Musicians Ben. Assn., 93 Mo. App. 383, 389-390, by the So. Louis Court of Appeals, and State ex rel. v. Bridge Co., 206 Mo. 74, 136-137, by the Supreme Court, the cause should be certified to the latter court for final determination.''

I.　A painstaking examination of the record and briefs submitted in the Court of Appeals and a careful consideration of the authorities cited in the foregoing opinion, leads us to conclude that the trial court properly declined to issue the peremptory writ. With the exception of the concluding paragraph of the foregoing minority opinion, bearing upon the question of conflict in decisions, we fully agree with what is said in said minority opinion, and with that exception we hereby adopt the same. Upon the subject of conflict we would add the following:

*Conflicting Decisions.*

An examination of the majority opinion before us reveals the following language:

''The evidence shows that membership in the respondent corporation was valuable to relator, both in a professional and business way, and that relator has been deprived of his corporate rights, which we think is a pecuniary right as that term is used in the cases. [State ex rel. v. Georgia Medical Society, 38 Ga. 608, 611, 626; Sibley v. Carteret Club, 40 N. J. L. 295, 297; High's Extraordinary Legal Remedies, sec. 294, p. 273; Commonwealth v. German Society, 15 Pa. St. 25.]''

Scrutinizing the authorities cited we find that State ex rel. v. Georgia Medical Society, supra, is the only case which confirms the proposition enunciated. What the court there said apropos of the Georgia Medical Society, at page 626, was that: ''When the voluntary society accepted the charter, it became a private, civil corporation, and the corporators, then in being, acquired a property in the franchise, and every person who has since become a corporator has acquired a like property.

The property which the corporator acquires is not visible, tangible property; but it is none the less property, because it is invisible and intangible.''

However, as pointed out in the minority opinion, the Georgia case fails to follow the better considered rule that the property right which is violated must be a severable proprietary right. As said in Lawson v. Hewell, 118 Cal. 613, l. c. 621, an action to restrain defendants from proceeding with the trial of plaintiff before a chapter of the Masonic Order, ''The plaintiff does not show that any right of property belonging to him will be affected by the proposed action of the chapter. His averments that the chapter, as well as the commandery and council of which he is a member, have accumulated property by reason of the payment by himself and others of certain annual dues, fail to show that he has any severable proprietary right to any portion of this property, as against the body of which he is a member, or any right to its use or enjoyment except so long as he shall remain a member of the body. . . . His interest in the property thus appears to be only incidental to his membership, and will cease upon his ceasing to be a member.''

And as said in Wellenvoss v. Grand Lodge, Knights of Pythias, 103 Ky. 415, l. c. 420, a mandatory injunction proceeding, ''The allegation that Wellenvoss pays dues to appellant Uhland Lodge, and that lodge to appellee, and that both bodies are chartered benevolent societies, does not of itself state such rights of property as would authorize the chancellor to interfere because of the alleged violation of property rights. There should be some allegation showing that there is property or funds in the hands of the society in which a party is directly interested before he can ask aid of the court for relief.''

The rule is thus well stated in the mandamus proceeding of People ex rel. Rice v. Board of Trade, 80 Ill. 134, l. c. 137:

''It may be that, where a corporation is created for the purpose of pursuing some pecuniary business

for the acquisition of profits and gains for its members or stockholders, and a member is deprived of a right or privilege conferred by its charter, a court would, by mandamus, compel the body to admit such member to the exercise of his rights. In that case, a member or shareholder has such a pecuniary interest as might enable him to be protected or be admitted to the exercise of such rights by legal process; but courts never interfere to control the enforcement of the by-laws of merely voluntary associations created for the advancement of religious, moral or social principles, or merely for amusement.''

What the St. Louis Court of Appeals said in Lysaght v. St. Louis Operative Assn., 55 Mo. App. 538, l. c. 544, was, that: ''Mandamus is the most appropriate remedy to restore or induct one into the enjoyment of the privileges of an incorporated association, of which he is unlawfully and unreasonably deprived. The courts, however, restrict the application of this remedy to cases where the relator is deprived of some pecuniary right.''

In Froelich v. Musicians Ben. Assn., 93 Mo. App. 383, l. c. 390, the principle is expressed thus: ''It must further appear that some property or civil right is involved in the controversy. So long as an association remains a voluntary one the courts have no jurisdiction over it and the courts will not interpose between it and a member except for the sole purpose of protecting an interest the member may have in the property of the association.''

These last two enunciations are in entire accord with the principle announced in the decisions of the foreign jurisdictions quoted above. And, when applied to the particular facts before the court, what was decided by the St. Louis Court of Appeals is not in conflict with the conclusion reached by the minority opinion of the Kansas City Court of Appeals herein. In both the Lysaght and Froelich cases the property right which plaintiff was held entitled to was an interest in a fund

accumulated to defray funeral expenses of members. Clearly the facts in those cases are not analogous to the facts in the case under review.

The case of State ex rel. v. Bridge Co., 206 Mo. 74, but lays down the doctrine, l. c. 137, that: ''The granting or denial of an application for a mandamus rests largely within the sound legal discretion of the court, to be exercised in accordance with the established rules of law, and in exercising such discretion the court will consider all of the circumstances, reviewing the whole case, with due regard to the consequences of its action.''

There is nothing inconsistent with that pronouncement and the reasoning of the minority opinion before us. The minority opinion goes but a step farther and holds that the applicant for a writ of mandamus must come into court with clean hands, which we think is sound.

II. In addition to the reasons for sustaining a denial of the writ, as discussed in the minority opinion of the Court of Appeals, we are impressed with the argument advanced in behalf of respondent that a refusal to issue the writ will not be reversed on appeal unless a flagrant abuse of discretion by the trial court is clearly shown.

*Discretion.*

It has often been held that the findings of the trial court in a mandamus proceeding, as to the facts in the case, when supported by substantial evidence, will not be disturbed on appeal. [State ex rel. v. Dreyer, 183 Mo. App. 463; State ex rel. v. Kernes, 180 Mo. App. 355; State ex rel. v. Ins. Co., 169 Mo. App. 354.]

In Moody v. Fleming, 4 Ga. 115, in discussing the power of an appellate court to control the action of the trial court, it was said, at page 117: ''Whilst this court has the power to review the judgment of the circuit court on a matter wherein that court is by law left to a sound legal discretion, yet it will control that discretion only in cases where there is a refusal to exercise or a flagrant

abuse of it.   The writ of mandamus is a prerogative writ, and does not issue as a mere matter of right.''

In People ex rel. v. Jeroloman, 139 N. Y. 14, it was said, at page 18: ''We could not review the exercise of discretion by the court below unless there were a clear abuse of it.''

In Chesebro v. Babcock, 59 Conn. l. c. 217, the court said: ''The granting or refusing a mandamus is a matter resting in the sound discretion of the court and the exercise of that discretion is not the subject of revision on appeal.''

In Vincent v. Ellis, 88 N. W. (Iowa), l. c. 838, the general rule is thus expressed: ''The granting of a writ of mandamus is not a matter of right, and rests very largely within the discretion of the court.  It is true that such discretion must not be abused or exercised arbitrarily; but the rule that the order of the trial court upon an application of this kind will not be disturbed is so well established that it has often been held no appeal will lie therefrom unless it plainly appears that the complaining party has a clear, legal right at stake, and no other adequate remedy at law exists.''

People ex rel. v. Interurban Ry. Co., 177 N. Y. 296, l. c. 299, states the principle thus:  ''If the right of the relator to the writ is not clear, or if there was some other adequate legal remedy more appropriate to the case, then the relator had no absolute right to the writ; and if the courts below were of the opinion that it was inexpedient to grant it under the circumstances, then this court has no right to interfere.''

Other cases which are illustrative of the rule that an appellate court will not interfere with the judgment of the trial court unless an abuse of discretion is shown are: Tuttle v. Iron Natl. Bank, 62 N. E. (N. Y.) 761; Achuff's Appeal, 12 Pa. Sup. 573; City of Little Rock v. United States, 103 Fed. 418, l. c. 426; Moores v. State, 71 Neb. 522; Hollister v. Donahoe, 16 S. D. 206; In re Dederick, 77 N. Y. 595.]

In 26 Cyc. 507, the doctrine is summarized thus: "On appeal or error in mandamus proceedings the appellate court cannot consider the weight of conflicting evidence, or review the discretion of the court below in granting or refusing the writ, where it appears to have been lawfully exercised and no abuse is shown."

In the case at bar there is no contention that there was any abuse of discretion by the trial court. And under all the circumstances we feel that the writ was very properly denied.

Let the judgment of the circuit court be affrmed. It is so ordered. All concur.